# Richmond.

## RICHMOND RAILWAY & ELECTRIC CO. v. BROWN.

### MARCH 23, 1899.

1. MANDAMUS—*Jurisdiction of Circuit Court of Richmond—Sec. 3218 of Code.*—The Circuit Court of the city of Richmond has jurisdiction of a *mandamus* to compel the plaintiff in error to issue a transfer to a passenger within the limits of the city, although the obligation to perform that duty appear from a record of the County Court of Henrico. Section 3218 of the Code has no application to the case.

2. MANDAMUS—*Public Duty—Application by Private Person.*—A private person may apply for a *mandamus* to enforce a public duty, not due to the government as such, without the intervention of a law officer of the government. And in the case at bar the petition is sufficiently full to entitle the petitioner to the writ.

3. MANDAMUS—*Other Adequate Remedy.*—The "adequate remedy" which will bar *mandamus* must be such as reaches the end intended, and actually compels the performance of the duty in question. It must be equally as convenient, beneficial, and effective, as the proceeding by *mandamus.* The remedy by repeated actions at law to recover damages for a constantly recurring and continued violation of duty is not adequate.

4. MANDAMUS—*Personal Rights—Contractual Duties—Public and Official Duties.*—*Mandamus* does not lie to enforce merely private or personal rights, or contractual duties. Its proper function is to enforce duties growing out of public relations, or imposed by statute, or in some respect involving a trust or official duty.

5. CORPORATIONS—*Corporate Duties—Mandamus—Case at Bar.*—If an act of incorporation merely confers vitality and corporate existence on a corporation, and the terms and conditions on which it is to exercise its corporate powers are to be prescribed by some other designated authority, then such terms and conditions, when prescribed, become parts of the organic law of the corporation, and may

be enforced by *mandamus* awarded on the application of a private person who is injured by their violation. In the case at bar the defendant in error is entitled to the free transfer claimed by him over the line of street railway of the plaintiff in error.

Error to a judgment of the Circuit Court of the city of Richmond rendered November 25, 1898, on an application for a *mandamus* wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Affirmed.*

The Richmond Railway and Electric Company (plaintiff in error) was incorporated by an Act of Assembly approved February 20, 1890, (Acts 1889-90 p. 499). Under its charter it was authorized to acquire existing street railways in the city of Richmond, and to construct and operate its own lines in the city of Richmond and the county of Henrico. Under the power thus conferred it acquired two independent lines in the city of Richmond, and extending into the county of Henrico. These two lines were under no obligation to transfer passengers from one to the other. The charter also invested the judge of the County Court of Henrico county with authority to consent to the location of the company's railway on the highway of the county, subject to all the restrictions, limitations and conditions of whatsoever nature that the said judge might impose as to so much of the line as was within the limits of the county. Under an agreement with said judge dated June 24, 1892, the company extended its line in the county from the intersection of First street with the county line to the intersection of North Avenue and Kersting street. Subsequently, under a similar agreement, the line was further extended to the point where North Avenue intersects Brookland Park Boulevard; and by an agreement dated October 14, 1896, it extended its line from the latter point " along said Boulevard to Brook Road, and also from where said Boulevard intersects Chamberlayne Avenue, along Cham-

berlayne Avenue, to Walton Avenue. This last mentioned agreement, contains amongst others, the following provisions:

"Seventh.—Said Richmond Railway and Electric Company agrees to transfer passengers on this extension who have paid one fare to and from the said Barton Heights extension at First and Clay streets, to its Clay street cars without charge of any extra fare, and said passengers so transferred shall have all the rights of any passenger on the main line to which he is transferred at that point.

"Eighth.—The fare charged on said extension shall be five cents, and if any reduction shall hereafter be made in said fare, or any special privilege granted to passengers in the city of Richmond on the lines owned and operated by said Richmond Railway and Electric Company, the same reduction and privilege shall be enjoyed by the passengers on this extension."

"Eleventh.—And as one of the conditions of the franchise herein granted, the said company agrees that the schedule of twenty minutes, penalties for failure to give the same, and the rate of fare and privileges as provided in section six and eight respectively of this contract shall apply to its western Main street extension; and that all passengers on the said west Main street extension shall be transferred to and from its Main street line in the city of Richmond, without charge of any extra fare, and the passengers so transferred have all the rights of any passengers on said Main street line."

The complaint of the petitioner (defendant in error) is that he is not accorded "all the rights of any passengers on the Main street line" to which he is transferred on reaching the city limits. The ground of complaint is set out in the petition for the *mandamus* as follows, to wit:

"Your petitioner further states that he conducts his business in the city of Richmond, and that each morning it is necessary for him to go to the said city to carry on the same, and that it has been his custom to board the cars of the Richmond Railway

and Electric Company in front of his house, and after travelling on their branch line to First and Clay streets to receive transfers at that point and on his further request the conductor by punching the same permitted him to be transferred to any of their cars travelling in the same direction, but your petitioner states that in February of this year the said company deprived your petitioner of this right after having received a transfer at the corner of First and Clay streets, to receive another or to have his transfer ticket punched for any given point on the main line and that after the month of February, having once received a transfer, when he desired to change cars at the regular transfer points, he was compelled to pay an additional fare, a requirement which was not required of the passengers travelling on the main line at the point where he received his transfer, and to the same effect has he been debarred of the privilege of receiving a transfer or punched ticket allowing him to ride at First and Clay streets on his way home, when he has once before received a transfer.

" Your petitioner further states that suffering under this unreasonable deprivation of his rights by the said company he, on the 23d day of July, 1898, entered car No. —— of the Richmond Railway and Electric Company on Brookland Park Boulevard and immediately paid the fare required of him, and then requested that a transfer ticket would be punched to him to the Clay street cars at First and Clay streets, this was promptly done by the conductor of that car, but when he arrived at First and Clay streets in the city of Richmond and boarded car No. 156 of said company going east, and requested that his transfer ticket be punched to 9th and Main streets so that he might ride on the Main street cars going in the same direction, the conductor refused to punch said transfer ticket for that point, claiming that it was against the rules of the company, and your petitioner was then compelled to pay and did pay an additional fare to continue his ride on the Main street line going in the same direction. At the same time that your petitioner entered the car at First

and Clay streets with his transfer, a passenger boarded the same car going in the same direction, and, after paying his fare demanded of the conductor a transfer to 9th and Main streets (the point where your petitioner had been denied the right to be transferred and he received it, and was allowed to ride on the Main street car going east without the payment of anything additional.

" Your petitioner therefore alleges and charges that the condition of the extension of the franchise by the County Court of Henrico county to the Richmond Railway and Electric Company was granted on the ground that a citizen of the county of Henrico travelling on the extention should have ' on the main line ' to which he was transferred *all* the *rights* of *any* passengers on that line and your petitioner alleges that this privilege was unjustly denied him on the 23d day of July 1898, and will be unjustly denied him in the future since the said company has signified its intention not to grant such rights. And your petitioner states that under this rule, adopted by the said company, himself and others similarly situated are debarred the privilege, without the payment of an extra fare, of travel by either the Forest Hill Park line, or the Main street line to the wharves, to Manchester, to the New and Old Reservoir, and numerous other places which is now allowed on cars of the defendant company to ' passengers on the main line ' at First and Clay streets to which they are transferred."

The company admits that at one time it had issued several transfers to the Henrico passengers, but avers that it was found to be a losing business, and so the order was withdrawn " and the equable and just rule established of allowing one transfer and only one transfer to a passenger paying his five cent fare, whether said passenger desired to be transferred to a line to which, by law he was transferrable or not. It is under this fair system that your respondent is now working, and it is of this Mr. Brown is complaining, though he is given one transfer at First and Clay streets

whilst a passenger in Richmond is given one transfer, and one transfer only at any point of your respondent's line, that said Richmond passenger may desire."

The other facts sufficiently appear in the opinion of the court.

*Wyndham R. Meredith,* for the plaintiff in error.

*H. R. Pollard* and *Sands & Sands,* for the defendant in error.

HARRISON, J., delivered the opinion of the court.

The court is of opinion that the Circuit Court of the city of Richmond had jurisdiction to hear and determine the right of the defendant in error to the writ of *mandamus* prayed for in this case. If it was the duty of the plaintiff in error to transfer the defendant in error, as claimed in the petition for *mandamus,* the alleged violation of that duty occurred in the city of Richmond, within the jurisdiction of its Circuit Court, and it was a matter of no importance that the obligation to perform said duty, appeared from a record of the County Court of Henrico county. Section 3218 of the Code, providing that the jurisdiction of writs of *mandamus* shall be in the Circuit Court of the county wherein the record or proceeding is to which the writ relates, has no application to the case at bar.

The court is further of opinion that the demurrer to the petition was properly overruled.

The first ground of demurrer is that the petition should not have been brought in the name of a private individual, but in the name of some officer authorized to represent the commonwealth. The practice contended for does not obtain in Virginia, and is not sustained by the weight of authority elsewhere. That private persons may move for *mandamus* to enforce a public duty, not due to the government as such, without the intervention of a law officer of the government, is settled by the highest authority. *Union Pacific R. Co.* v. *Hall,* 91 U. S. 355.

The second ground of demurrer is that petitioner failed to allege that he was a permanent resident on Brookland Park boulevard, or that he owned or leased a home there, or that he was then or would in the future be entitled to the right sought to be enforced. The petition is sufficiently full in the respect mentioned to entitle the petitioner to be heard. The allegation is that he is a citizen of the county of Henrico, residing on Brookland Park boulevard, and that he is entitled to the benefit of the duty which the plaintiff in error fails and refuses to perform, and that he is suffering under the deprivation of his rights by the defendant company, and that he has no other adequate remedy at law.

The third ground of demurrer is that the prayer of the petition is wider than the wrong complained of. Exactly what is meant by this assignment of error does not appear. The petitioner can obtain no relief under his petition but that which the facts stated justify, and it is not perceived that the breadth of his prayer has, in any way, prejudiced the plaintiff in error.

The court is further of opinion that the motion to quash the petition was properly overruled. The first ground assigned in support of this motion was that the remedy was complete and adequate at law by a suit for damages. In order that the existence of another remedy shall constitute a bar to relief by *mandamus*, such other remedy must not only be adequate in the general sense of the term, but it must be specific and appropriate to the circumstances of the particular case. The remedy at law which will operate as a bar to *mandamus* must generally be such a remedy as will enforce a right, or the performance of a duty. A remedy cannot be said to be fully adequate to meet the justice and necessities of a case, unless it reaches the end intended, and actually compels a performance of the duty in question. Such other remedy, in order to constitute a bar to *mandamus*, must be adequate to place the injured party, as nearly as the circumstances of the case will permit, in the position which he occupied

before the injury or omission of duty complained of. The controlling question is not, " Has the party a remedy at law? " but " Is that remedy fully commensurate with the necessities and rights of the party under all the circumstances of the particular case? " Or, as was said in one case, " To supersede the remedy by *mandamus* the party must not only have a specific remedy, but one competent to afford relief upon the very subject matter of his application, and one which is equally convenient, beneficial, and effective as the proceeding by *mandamus*." 2 Spelling Ex. Relief, sec. 1375.

In the case at bar the *mandamus* was sought to compel the plaintiff in error to transfer the defendant in error from one to another of its street cars without additional charge. If the defendant in error was entitled, as alleged, to the transfer, it is manifest that a suit at law for damages for a failure to perform that duty was not an adequate remedy, and would not actually compel the performance of the duty in question. The wrong suffered was a constantly recurring and continual one, and, whatever may have been the result of repeated suits for damages, the remedy was not as convenient, beneficial, or as effective as the proceeding by *mandamus*.

The second ground assigned in support of the motion to quash was that the duty charged as resting on the plaintiff in error was not based upon its charter, nor upon the general law relating to common carriers, but grew out of a contract between the plaintiff in error and the judge of the County Court of Henrico, and was therefore purely contractual.

It is an important principle constituting a distinguishing feature of *mandamus* that it does not lie to enforce mere contractual duties. Its proper employment is to enforce the performance of duties incumbent by law upon the person or body against whom the coercive power of the court is invoked. Rights of a private or personal nature, and obligations resting entirely upon contract, not involving any question of trust or of official

duty, cannot be enforced by *mandamus*. In other words, the writ of *mandamus* cannot be substituted for a decree for specific .performance of duties other than those growing out of public relations, or such as are clearly imposed by statute, or in some respects involving a trust. 2 Spelling Ex. Relief, sec. 1379.

We must therefore enquire whether or not the duty in question is incumbent, by law, upon the plaintiff in error.

By act of the General Assembly approved February 20, 1890, (Acts 1889-90, p. 497) the Richmond Railway & Electric Company was made and constituted a body politic and corporate, with the power to construct, equip, maintain, and operate a line or lines of street railway in the cities of Richmond and Manchester and the counties of Henrico and Chesterfield. The act of incorporation provides that the plaintiff in error may construct and operate its line or lines of railway over the streets of said cities, and the public roads of said counties; provided the councils of said cities respectively, and the judges of the county courts of the said counties respectively, who are vested with authority so to do, shall consent to the location of said railway on the streets and highways within their respective limits or jurisdiction. And it is further expressly provided that all lines of railway constructed by the said company under the act of incorporation shall be at all times subject to all restrictions, conditions, and limitations of whatsoever nature which may be imposed, respectively, by the councils of said cities, or by the judges of said county courts as to so much of said railways as may be within the limits or jurisdictions of said cities and counties respectively.

In pursuance of this act of incorporation the plaintiff in error petitioned the County Court of Henrico for permission to construct its railway over the highways in a certain portion of that county, and, in pursuance of the power vested in him by the act of incorporation, the judge of that court, on the 14th day of October, 1896, entered an order granting the permission prayed for, and prescribing the terms and conditions upon which the said railway should be constructed and equipped.

There is no contract with the defendant in error that he is asking to have enforced, nor is the order of the county court of Henrico a contract with the plaintiff in error, except in the sense that the charter of a private corporation is a contract between the State and the corporation for the benefit of those who are entitled to have performed the duties imposed by the charter. As already seen, one of the stipulations of the act of incorporation was that the plaintiff in error might build its railway upon the highways of Henrico county upon such terms and conditions as the judge of that county should prescribe. When, therefore, the order of October 14, 1896, was entered, prescribing those terms and conditions, and in pursuance thereof the road was built and equipped, those terms and conditions became, so far as their binding force and effect was concerned, as much a part of the organic law of the company as if they had been embodied in the act of incorporation. The very life of the franchise in the county is derived from the judge of the County Court, without whose consent, by the express terms of the act of incorporation, the plaintiff in error could not have constructed its railway upon the highways of the county.

In the case of *City of Potwin Place* v. *Topeka Rwy. Co.*, 51 Kan. 609, where it was contended that a city ordinance did not confer rights and impose obligations which could be enforced by *mandamus* in the same manner as charter obligations could be, the court says: " The obligations imposed upon a railroad company are seldom defined with any degree of particularity by the terms of its charter, and this is especially true of street railways, and in this State where all corporations are formed under general laws. It is true that the company gets its charter under the general law of the State, but the right conferred by the charter of a street railway company incorporated for the purpose of operating a street railroad in the city of Topeka is but a barren grant until it is given form and force by an ordinance of the city permitting it to enter on the streets

and construct and operate its lines. From the State directly it derives but the bare power to exist. Its vital force comes from the State, indeed, but through the subordinate agency of the city council, which is given power by the legislature to fix the terms and conditions on which it may actually carry out the purpose of its creation."

So, in the case at bar, the act of incorporation is a bare grant giving the plaintiff in error an existence, valueless, however, until the purpose of its creation is effectuated by the subordinate agencies of the cities and counties named therein through whose respective limits its railway line might be run, consenting thereto, and prescribing the terms and conditions upon which the privilege might be exercised.

The order of the County Court being the very life of the franchise in the county of Henrico, and necessarily a part of the organic law governing the plaintiff in error, it follows that the performance of the terms and conditions prescribed by that order constitutes a duty enjoined by law, which the plaintiff in error may be compelled by *mandamus* to perform.

The court is further of opinion that there is no error in overruling the motion to dismiss the petition on its merits.

The order of the County Court of Henrico expressly prescribes, as one of the terms and conditions upon which the road should be constructed upon the highways in said county, that the plaintiff in error should transfer passengers on the county extension, for one fare, to and from that extension at First and Clay streets to its Clay street cars, and that when so transferred said passengers should have all the rights and privileges of any passenger on the main line to which he is transferred at that point. One of the privileges enjoyed by the passengers on the main line to which the defendant in error was transferred at the corner of First and Clay streets is a transfer from that line to any of the cars of the plaintiff in error going in the same direction. The right of the defendant in error to enjoy this privilege, in

common with the passengers on the main line, was recognized by the plaintiff in error, and was accorded until a recent date, when it was refused, unless an additional fare was paid at the point of transfer in question—the company contending that the defendant in error was only entitled to the one transfer at Clay and First streets; that to give him another from that line was according him two transfers going in one direction, while the Richmond passenger had but one. The object of the County Court of Henrico was, not to secure to those sought to be protected by its order any particular number of transfers, but to secure to them, after being transferred to the main line at First and Clay streets, all the rights and privileges enjoyed by the other passengers on that line. As long therefore, as the privilege of transfer is enjoyed by other passengers, at the point in question, without additional charge, the passenger on the county line who is transferred at Clay and First streets is entitled to the same privilege, without additional charge.

For these reasons the judgment of the Circuit Court must be affirmed.

*Affirmed.*