## MONAGHAN v. MOUNT ET AL.

[No. 5,197.    Filed May 23, 1905.    Rehearing denied October 4, 1905.]

1. DEEDS.—*Gas and Oil Contracts.—Estates Conveyed.—Reëntry. —Incorporeal Hereditament.*—A gas and oil contract, whereby the plaintiff "grants and guarantees" the gas and oil under certain real estate, does not permit of reëntry for condition broken, since reëntry can not be made upon an incorporeal hereditament. p. 194.

2. QUIETING TITLE.—*Gas and Oil Grants.*—A suit will lie to quiet title, as against a grant of the oil and gas under real estate, either where the original contract was insufficient or because of the termination of the rights created by such grant.    p. 195.

3. PLEADING.—*Complaint.—Quieting Title.—Certainty.*—A complaint to quiet title to fifty acres out of a one-hundred-acre tract, leaving five ten-acre tracts upon each of which was an oil-well, is insufficient where the original grant did not specify any method of ascertaining the boundaries of such ten-acre tracts. p. 195.

4. COVENANTS.—*Gas and Oil.—"Paying" Field.*—Where the grantee of the oil and gas under a certain tract covenants to put down a well every ninety days, and he puts down five wells on said tract, all of which are "paying," he can not be heard to say, on his refusal to sink more wells, that such tract is not a "paying" field.    p. 196.

5. SAME.—*Alternative.—Gas and Oil.—Demand.*—Where defendant covenanted to put down a gas or oil well every ninety days on a certain tract or to surrender his rights under a grant of the gas and oil thereunder, and he failed to do either, and the plaintiff had been accepting the benefits of the grant as to the wells in operation, a demand for decision should have been made upon defendant as to which course he would pursue, before a suit was brought to quiet title.    p. 197.

From Wells Circuit Court; *Edwin C. Vaughn,* Judge.

Suit by Patrick T. Monaghan against Harry Mount and another. From a decree for defendants, plaintiff appeals. *Affirmed.*

*Levi Mock, John Mock, George Mock* and *Brownlee & Browne,* for appellant.
*Dailey, Simmons & Dailey,* for appellees.

BLACK, J.—The court sustained a demurrer for want of sufficient facts to the appellant's second paragraph of complaint, the only paragraph remaining in the record. The action was commenced in September, 1903.

In the second paragraph it was shown that the appellant, August 21, 1899, was, and he ever thereafter has been and still is, the owner in fee simple of certain real estate in Wells county, described, being the east half of the southwest quarter of section five, township twenty-five north, range eleven east, containing eighty acres, more or less; also the south half of the southeast quarter of the northwest quarter of said section, containing twenty acres, more or less; that at the date mentioned appellant entered into a written contract with one Day, who, September 29, 1899, assigned the same to the appellees. The contract was set forth in the complaint, and we will quote its contents so far as they illustrate the questions in dispute: "In consideration of the sum of $100, the receipt of which is hereby acknowledged," the appellant, "party of the first part, hereby grants and guarantees unto J. C. O. Day, second party, all the oil and gas in and under the following described premises, together with the right to enter thereon at all times for the purposes of drilling and operating for oil or gas, and to erect and maintain all buildings and structures and lay all pipes necessary for the production and transportation of oil or gas. The first party shall have the one-eighth part

of all oil produced and saved from said premises, to be delivered in the pipe-line which second party may connect with his wells, namely [describing the land, one hundred acres more or less, above mentioned]. To have and to hold the above premises on the following conditions: If gas only is found in sufficient quantities to transport, second party agrees to pay first party $100 for the product of each and every well so transported. * * * In case no well is completed within sixty days from this date, then this grant shall become null and void, unless second party shall thereafter pay at the rate of $1 in advance for each day such completion is delayed. * * * The second party shall have the right, free of charge, to use sufficient gas and water to run all machinery for operating said wells; also the right to remove all property at any time. In case each well produces twenty barrels per day, or better, first party to have one-sixth royalty, under that, one-eighth. * * * Second party further agrees to complete a well every ninety days from completion of first, if first well is a paying well, or surrender lease, excepting ten acres for each paying well. It is understood between the parties of this agreement that all conditions between the parties hereunto shall extend to their heirs, executors and assigns. In witness whereof," etc. The writing was signed and acknowledged by the appellant, and was recorded September 25, 1899, in the recorder's office of Madison county.

It was alleged in the complaint that the appellees, about December 16, 1899, by virtue of this contract, entered upon said premises and drilled well No. 1 on the northeast quarter of the northeast quarter of the southwest quarter of said section five; this well being "250 feet west and 193 feet south of the northeast corner thereof;" that January 4, 1900, the appellees drilled well No. 2 on the northwest quarter of the northeast quarter of the southwest quarter of said section five, this well "being 250 feet east and 93 feet

south of the northwest corner thereof;" that March 5, 1900, the appellees drilled well No. 3 on the southwest quarter of the northwest quarter of the southwest quarter of said section five, this well "being 250 feet ( ?) and 825 feet south of said well No. 2 ;" that May 10, 1900, the appellees drilled well No. 4 on the northwest quarter of the southeast quarter of the southwest quarter of said section five, this well "being 250 feet east and 423 feet south of well No. 3 ;" that September 10, 1900, the appellees drilled well No. 5, on the southeast quarter of the northeast quarter of the southwest quarter of said section five, this well "being 250 feet west and 683 feet south of said well No. 1."

It was alleged that all these wells "were and are paying wells, and have been operated and pumped ever since; that no other well or wells have been drilled on said premises since the completion of said well No. 5 ; that it was agreed by the terms of said written contract that the lessee and assigns should complete a well every ninety days from the completion of the first well, if the first well was a paying well, or surrender said lease to all except ten acres for each paying well drilled ;" that the lessee and the appellees failed to drill any wells on the following parts of said real estate : The south half of the southeast quarter of the southwest quarter of said section five; also the northeast quarter of the southeast quarter of the southwest quarter of said section five; also the south half of the southeast quarter of the northwest quarter of said section five ; that at least five wells should have been drilled on said tracts pursuant to said contract, and to develop properly said real estate for oil purposes; that said lease should be surrendered to the appellant and declared forfeited as to said undrilled territory. There was set out in the complaint "a plat of said drilled and undrilled territory," as follows: Section five, township twenty-five north, range eleven east, Wells county, Indiana.

Monaghan *v.* Mount—36 Ind. App. 188.

A.  ——20 acres undrilled.
B.  ——10 acres undrilled.
C.  ——20 acres undrilled.

1.  Well No. 1.
2.  Well No. 2.
3.  Well No. 3.
4.  Well No. 4.
5.  Well No. 5.
6.  Well on adjoining land.

It was further alleged that all of said tract of 100 acres contained and was underlaid with large, vast and valuable quantities of natural gas and petroleum, which could be, and at all times since the execution of said contract could have been, easily obtained in paying quantities, and that paying oil and gas-wells could have been, and still could be, drilled and completed and operated on all of said real estate; that a well had been drilled within two hundred feet of the west line of the south half of the southeast quarter of the northwest quarter of said section five, "which produces oil

in paying quantities, and is being operated, and oil thereby taken from the plaintiff's said land in large quantities, to the great injury of plaintiff, and the defendants fail and refuse to protect the lines of the plaintiff's said land, to the plaintiff's great damage and injury; and the plaintiff has no remedy under the terms of said contract to protect himself and his said land from still greater injury, or to prevent the oil being taken from his said premises, except by cancelation of said contract as to all of the defendants' rights thereunder as to said undrilled territory as designated above; that the plaintiff can and has opportunities to lease said undrilled territory to other persons, who will drill and operate oil-wells on the same, and will protect the plaintiff's said lines; that he can not secure operations on said undrilled land so long as the alleged claim of the defendants constitutes a cloud upon the title of the plaintiff to said undrilled portion of said land; that by virtue of the terms of said contract, and the election of the plaintiff to terminate the same as to all of said undrilled territory, each of said defendants has forfeited, and should be compelled to surrender to plaintiff, all rights under said contract in and to all of said undrilled territory above designated. Wherefore the plaintiff prays the court that said contract be declared null and void as to the above-described undrilled territory; that the defendants be ordered to surrender and forfeit the same to plaintiff; that a commissioner be appointed to cancel of record said contract as to said undrilled territory; and for all other relief."

Since the comparatively recent discovery and utilization of petroleum and natural gas in this country and in this State, the courts have had to deal with many controversies involving rights and obligations under contracts in which the interested parties and their counsel have sought to adapt old forms and established principles to the new subject-matter; and there is perhaps little occasion for wonder at the diversity of contracts which have come before the courts.

Many of these contracts have assumed the form, in great part, of leases of land, a corporeal hereditament, susceptible of livery of seizin, upon which there may be reëntry upon forfeiture of the estate therein, and which may be dealt with in litigation upon long-used and familiar principles. Sometimes the written instruments in question have taken the form of grants of incorporeal hereditaments, not susceptible of livery of seizin, and sometimes provisions heretofore recognized as peculiarly belonging to leases have been intermingled with provisions heretofore generally found only in instruments usually denominated deeds of conveyance.

The instrument now before us, in its premises, contains the word "grant," also the word "guarantee" which has a strange look in such company—possibly intended 1. in the sense of warrant. It is purported that the party of the first part grants and guarantees to the party of the second part all the oil and gas in and under a certain tract of 100 acres of land, with the necessary privilege of going upon the land to extract the fugitive substances which may be or may come under the surface. The party of the first part, the owner of the land, does not part with his possession, but retains it for the purposes for which its surface may be used, and does not part with his title, except as to the oil and gas under the surface. His possession of the surface is subject to such interruption only as may be requisite in seeking for the gas and oil. Of the parcels whereon no wells have been drilled, designated in the complaint, concerning which some sort of recovery is desired by the appellant, there has been no interruption of the possession of the appellant, and there could be no rightful entry thereon under the contract, on the part of the appellees, except for the purpose of seeking, by drilling, for oil or gas. The appellant can not be regarded as seeking the recovery of the possession of these parcels, of which he already has possession. There can be no reëntry by him upon these

Monaghan v. Mount—36 Ind. App. 188.

parcels. Reëntry, in its legal sense, applicable to real estate, must be made upon that which is capable of livery of seizin, and can not be made upon an incorporeal hereditament.

The appellant seeks to have restored to him what, by the instrument in question, he granted to the appellees—the ownership and right to take the oil and gas under the land, not as to the entire tract, but as to certain parcels thereof described in the complaint, on which it is alleged the appellees have failed to drill wells as required by the contract. It is not sought to cancel the entire contract, or to forfeit the entire estate or interest created thereby, or to enforce a surrender of such entire estate or interest.

A suit will lie to quiet the title of an owner of land as against a claim under a contract purporting to grant the oil and gas under its surface, with the right to enter 2. for the purpose of seeking and taking the oil and gas, where such claim is unfounded because of the original insufficiency of the contract, or because of the termination of the rights and interests created thereby in some manner recognizable as sufficient to work such a determination of such rights and interests.

To enable a court to quiet title to land, or to adjudge the forfeiture of an interest therein under a lease or a grant, or to enforce a conveyance of land, the court must 3. ascertain and describe the real estate with certainty and exactness. The complaint, as is asserted in argument by counsel for the appellant, describes definitely certain parcels of land as to which the appellant desires to be restored to the rights and interests therein which were granted by the written contract; but, upon the whole facts stated in the pleading, it appears that these definite parcels are arbitrarily selected by the appellant; and, if it could be said that in other respects he is entitled to any relief, the complaint does not furnish facts which would enable the court to describe definitely any parcels out of the 100 acres to which it could apply the relief. The contract required

the party of the second part to complete a well in every period of ninety days from the completion of the first well, if it proved to be a paying well, or to surrender the lease, excepting ten acres for each paying well. The contract did not further describe these tracts of ten acres each, which were to be excepted out of the 100 acres; and, without a sufficient description thereof, there could be no definite description of the remainder of the 100 acres, the rights of the appellees in which were to be surrendered. As appears from the complaint, and the plat made part thereof, it is manifest that it would be possible to bound in many different shapes ten-acre tracts on each of which would be one of the five wells already drilled.

The case of *Jones* v. *Mount* (1900), 30 Ind. App. 59, cited by the appellees, seems to sustain the conclusion that this complaint was insufficient because of the impossibility of definitely describing any parcels of land to be excepted out of the tract of 100 acres.

What we have said is sufficient for the decision of this case, and it is unnecessary to decide other questions suggested by the complaint before us.

It plainly appears that the appellees are not carrying out the purposes of the contracting parties, and that the appellant is suffering loss in consequence of the conduct of the appellees. The appellant does not desire to drill additional wells himself. He may be unable to do so. He can, however, procure the drilling by other persons and thereby obtain an increase of income from his land, and prevent the loss of oil which is being taken on adjoining land, if the contract with the appellees and their conduct thereunder did not stand in the way. The grant was made subject to conditions expressed in the *habendum*. The grantee was to have and to hold "the above premises on the following conditions," etc.; and the understanding of the parties was stated to be that "all conditions between the parties" should extend "to their heirs, executors and

assigns." The second party covenanted to complete a well every ninety days from the completion of the first well, if it should be a paying well, or to surrender the lease, excepting ten acres for each paying well. It is true that in an action for damages for breach of covenant it could not be determined how much oil could be obtained from the additional wells if drilled; but this covenant is among the expressed conditions upon which the appellees have and hold, and it is not for the appellees to say that it can not be known that oil or gas will be reached by drilling a well upon a particular tract of land. Their obligation to continue to drill wells was fixed when the first well proved to be a paying well. For the purposes of their contract, it is an ascertained fact that the remainder of the tract is a paying field.

The provision in question expresses the obligation of the appellees in the alternative, thereby devolving upon them the making of a choice as to the course to be pursued by them. It is their duty to make such choice, and pursue one or the other of the alternative courses indicated. For a long period, however—from ninety days after September 10, 1900, until the commencement of this action, about two years later—the appellant presumably had been accepting his share of oil from the five wells, and silently allowing the appellees to abstain from further development or the surrender provided for in the contract; and the contract did not certainly prescribe how many wells should be drilled, or designate exact locations for any wells. It would be equitable, it would seem, that the appellant should make a demand upon the appellees to exercise their choice before resort by him to the court. While the appellant, having neglected to insert definite descriptions in the contract, may not arbitrarily dictate the outline of the parcels to be excepted with the paying wells, it is competent for the appellees to do so, and no valid objection on the part of the appellant could prevent them from doing so.

If the appellees should refuse or neglect for an unreasonable time after demand to enable the appellant to have such use of his land as the contracting parties contemplated, and should for such reason be held to have forfeited all their rights and interests for the future under the contract, their great loss would be attributable solely to their own wrong.   We will not be understood, however, as intending to render a decision in advance of presentation and argument of this matter.

Judgment affirmed.