# CHARLESTON.

## JENNINGS v. SOUTHERN CARBON CO. *et al.*

Submitted June 17, 1911. Decided November 25, 1913.

1. MINES AND MINERALS—*Oil and Gas Leases—Cancellation—Grounds.*
   The owner of a lease for the production of oil and gas, containing the usual terms and conditions, must, if either mineral is found in paying quantities on or near the lands leased, exercise due and reasonable diligence in prosecuting operations thereunder, for the mutual benefit of himself and the landowner; and, if he fraudulently fails or refuses to conduct such further operations, equity will, at the suit of the lessor, decree either total or partial cancellation of the lease, according to the facts and circumstances averred and proved. (p. 219).

2.   SAME—*Oil and Gas Lease—Construction—Implied Covenants.*

   A lease which reserves to the lessor substantial royalties in kind
and in money on the oil produced and saved and the gas used off the
premises as the consideration and inducement for the lease, and
which, while expressly requiring the drilling of one well during the
first five years, does not by express terms define the measure of
diligence to be exercised after the expiration of that period, contains
a covenant by the lessee, arising by necessary implication from the
nature of the lease and the character of the minerals sought, that if,
during the five years allowed for original exploration and develop-
ment, oil or gas or both are found in paying quantities, the work of
development and production shall be continued with reasonable dili-
gence, to the end that the extraction of oil and gas from the lands
leased shall be mutually advantageous and profitable to the lessor
and lessee.   (p. 219).

3.   SAME—*Oil and Gas Lease—Construction—Implied Covenants—"Im-
       plication."*

   Whatever is implied in a lease is as effectual as what is ex-
pressed.   Implication is but another name for intention; and if it
arises from the language of the lease, when considered in its entirety,
and is not gathered from the mere expectations of one or both of the
parties, it is controlling.   Whatever is necessary to the accomplish-
ment of that which is expressly contracted to be done is part and
parcel of the contract, though not specified.   (p. 219).

4.   SAME—*Oil and Gas Lease—Construction.*

   Where the object apparently contemplated by both parties to an
oil and gas lease, at the date thereof, is to obtain, from the lands
leased, a benefit or profit as a result of operations thereunder, neither
is, in the absence of a stipulation to that effect, the arbiter of the
extent to which or the diligence with which, the operations shall
proceed; but both are bound by that degree of diligence which,
under the circumstances, would be reasonably expected of operators
of ordinary prudence, having regard for the interests of both.   (p.
221).

5.   SAME—*Grounds for Equitable Relief—Oil and Gas Lease.*

   A case in which it is held that equity has jurisdiction to grant
relief, by an entire or partial cancellation of the lease, depending on
proof of facts alleged as fraudulent by a bill erroneously dismissed
on demurrer.   (p. 223).

   Appeal from Circuit Court, Doddridge County.

   Suit by Virginia Jennings against the Southern Carbon
Company and others.   From decree for defendants, plaintiff
appeals.

                               *Reversed and Remanded.*
                    73 W. Va.

*Smith D. Turner,* for appellant.

*Brannon & Stathers, G. W. Farr* and *W. B. Gribble,* for appellees.

LYNCH, JUDGE:

The plaintiff brought her suit to obtain relief against the Southern Carbon Company, and others alleged to be interested with it, for failure properly to test her lands for oil and gas under a lease for that purpose theretofore executed by her and of which it had become the owner by assignment, and for failure to protect her lands from drainage through wells on adjoining lands drilled under other leases in which she alleges its stockholders and agents had an interest with another defendant. The circuit court dismissed the bill on demurrer, and she appealed.

The lease is in the form and upon the conditions usually contained in contracts of that character. The consideration therefor is one dollar and the covenants and agreements therein by the lessee. The lessor "by these presents does grant, demise, lease and let" to the lessee, for the sole purpose of mining and operating for oil and gas, "all that certain tract of land situate in Doddridge county", containing 146 acres. The lessee covenants, first, to deliver to the credit of the lessor, free of cost, in the pipe lines to which it may connect its wells, one-eighth of all oil produced and saved from the premises; and, second, to pay $200 per year for the gas from each gas well drilled thereon the product of which is marketed and used off the premises; "provided, however, this lease shall become null and void, and all rights hereunder cease and determine, unless a well shall be completed on said premises within six months from the date hereof, or unless the lessee shall pay at the rate of thirty-six dollars quarterly in advance for each additional three months such completion is delayed from the time above mentioned until a well is completed; and it is agreed that the completion of a producing well shall be and operate as a full liquidation of all rental under this provision during the remainder of the term of this lease." The term is five years and as long thereafter as either oil or gas is produced from the land by the lessee or its assigns; with

the right to surrender the lease at any time to the lessor for cancellation, after which all liabilities to accrue thereunder shall cease and the lease become void.

The Carbon company entered on plaintiff's land in 1905, and, on the extreme eastern edge, drilled a well to the "Big Injun" sand, a depth of about 1600 feet. The well produced gas in great quantities and at high pressure—8,000,000 cubic feet daily at first, and in paying quantities thereafter to the date of this suit, January, 1910. The company has done nothing further by way of drilling other wells on the land, or the first well to the lower oil and gas bearing strata found in that territory, and from which wells on other lands within a few feet of plaintiff's western boundary line were at the time and have been since producing both oil and gas in paying quantities.

Plaintiff charges fraud on the part of the Carbon company in denying plaintiff's importunities for the drilling of additional wells to further test her lands, and to protect her premises from drainage through wells on contiguous lands, in the production from which she also charges the company had an interest, either directly in its corporate capacity, or through its controlling stockholders for its or their special benefit, by reason of which it fraudulently refrained from making any effort to protect her lands against drainage. In support of the general charge of fraudulent conduct, she alleges that, having found in the well drilled in 1905 gas in quantities then and since amply sufficient for the operation of its carbon plant located near her lands, the Carbon company thereafter fraudulently ignored its obligations to her in order to conserve the gas within her lands for future consumption as its needs from time to time might require; that it fraudulently conspired with others to promote drainage from her lands through wells on the lands located near her western boundary line; and that, by reason of such fraudulent conduct, the pressure of the gas within her lands is being thereby constantly reduced and therefore gradually destroyed as an inexpensive medium for producing oil and marketing gas when found; compensation for which injury, she alleges, is not ascertainable, and therefore not measurable in damages in an action at law.

The demurrer, of course, admits these averments of the bill.

They are therefore, for the purposes of this case as now presented, stated herein as if fully established by competent proof.

Thus, it is apparent plaintiff does not complain of failure by defendants to comply with any expressed covenants or conditions of the lease. She complains of noncompliance with those thereby implied from the nature and character of the purposes in view at its inception by both parties thereto.

The lease does not expressly provide for the drilling of wells to any particular depth, or stratum wherein either oil or gas may be found. Nor does it contain any express provision for additional search for and the production of either substance after completion of the first well; nor for protection from drainage. But, from the absence of such stipulations, it must not be assumed that the lease is silent on the subject, or that these matters are subject alone to the arbitrary will of the lessee.

There is in every lease on land for the production of oil and gas a condition, implied when not expressed, that, when the existence of either of these valuable mineral substances in paying quantities becomes apparent from operations on the premises leased or on adjoining lands, the lessee shall drill such number of wells as in the exercise of sound judgment he may deem reasonably necessary to secure either oil or gas or both, for the mutual advantage of the owner of the land and of himself as operator under the lease; also for the protection of the lands leased from drainage through wells on adjoining or contiguous lands. As said in *Brewster* v. *Zinc Co.*, 140 Fed. 801: ''Whatever is implied in contracts of this character, indeed in any contract, is as effectual and forceful as are the things therein expressed. Implication is but another name for intention; and if it arises from the language of the lease, when considered in its entirety, and is not gathered from the mere expectancy of one or both of the parties, it is controlling. Whatever is necessary to the accomplishment of that which is expressly contracted to be done is part and parcel of the contract, though not specified''. So Archer on Oil and Gas 393: ''Leases for oil and gas are subject to the implied covenant that the lessee will do all that is necessary to carry into effect the purposes and objects of the lease. In the absence of

a contract to begin work within a certain time, there is an implied covenant to begin within a reasonable time. When the lessee commences explorations, there is an implied covenant that he will diligently prosecute the search, and, if oil or gas is found in paying quantities, that he will protect the lines and well develop the territory''; citing, among others, *Knotts* v. *McGregor,* 47 W. Va. 566; *Steelsmith* v. *Gartlan,* 45 W. Va. 27; *McGraw Oil Co.* v. *Kennedy,* 65 W. Va. 599; *Smith* v. *Root,* 66 W. Va. 633; *McKnight* v. *Gas Co.,* 146 Pa. 185; *Iams* v. *Gas Co.,* 194 Pa. 72.

Of course, to the judgment of the operator, when, and where, and how many wells he shall drill, deference is justly due. But the judgment must be an honest, not an arbitrary, judgment. He must deal with the leased premises, not exclusively to serve his own peculiar and selfish interests, unmindful of his obligations to the source from which his authority is derived, but so as to promote the mutual advantage and profit of himself and the lessor. To allow him to direct developments in the manner adapted only to the promotion of his gain, and effectually to the impoverishment of the lessor's estate in oil and gas, can not, in reason, be deemed as even remotely contemplated by either party at the inception of the lease. As in all other contracts, so in this, he must act and perform the contract so as to subserve the original purpose and intention of the parties. Hence, the practically universal interpretation of oil and gas leases is that, where the contract does not expressly state what shall be done by the lessee, there arises the legal implication that, if the latter finds one or both of these minerals on a lease operated by him, or if either he or other operators find them on adjoining lands, he will drill as many wells as will afford sufficient protection against drainage, and otherwise so develop the leased premises as to serve the mutual benefit of both lessor and lessee.

The necessity for such interpretation is readily apparent when the peculiar and distinctive characteristics of these mineral substances are considered—their illusive and migratory nature, their disposition to travel in the direction of least resistance, and to find vent through the most readily accessible opening. How far they travel to effect escape from the pressure under which they are confined, is problematical.

No one does or can know the extent, nor is he even able to approximate it with any reasonable degree of certainty. Hence, we say that, although the judgment of one experienced in developments under leases of this character is controlling, when compared with that of the landowner, who is without such experience, yet his judgment, if fraudulently exercised or exercised solely to promote his individual selfish interest, thereby ignoring the interests of the lessor, such judgment, being fraudulent, will not avail. To serve him, it must conform to that judgment generally exercised by other operators under similar circumstances and conditions, and in view of the real purpose and intention of the parties when entering into the agreement. "Where the object of the operations contemplated by an oil and gas lease is to obtain a benefit or profit for both lessor and lessee, neither is, in the absence of a stipulation to that effect, the arbiter of the extent to which or the diligence with which the operations shall proceed; but both are bound by the standard of what, in the circumstances, would be reasonably expected of operators of ordinary prudence, having regard to the interests of both". *Brewster* v. *Zinc Co., supra; Coffinberry* v. *Sun Oil Co.,* 68 Ohio 488; *Kleppner* v. *Lemon,* 176 P.a. 502, 35 Atl. 109 ; *Daughette* v. *Oil Co.,* 151 Ill. App. 102; *Guffey Petroleum Co.* v. *Oliver,* 79 S. W. (Tex.) 884. "The development and protection of lines which is implied when the lease is silent is such as is usually found in the same business of an ordinarily prudent man, neither the highest nor lowest, but about medium or average". *Harris* v. *Oil Co.,* 57 Ohio 118. Where, after completion of the first well, the lessor and operator entered into an agreement changing the terms of the lease, the effect of which was a waiver by the lessor of the implied condition for further development on other portions of his land, and therefore a limitation upon the production on the whole tract, it was held, notwithstanding the amended agreement, "that, conditions subsequently existing which required the lands to be protected by putting down other wells, there was an implied obligation upon the lessee to use reasonable diligence to protect the property, which bound him to sink as many wells as the exercise of due diligence should suggest to an ordinarily

prudent person engaged in the same undertaking under the same circumstances''. *Guffey* v. *Chaison,* 107 S. W. 609.

To the questions, what did the parties to the Jennings lease in fact contemplate at the date thereof, what was the purpose and object intended—implied? the inevitable answer must be, first, the test for oil and gas on the leased premises, and, if thereby oil or gas is found therein, then to be followed by other tests and the production of quantities mutually profitable to the operator and the lessor.

From the foregoing exposition of the character of the lease, its management by the Carbon company, its fraudulent refusal of further developments, the fraudulent combination of its officers and agents with other defendants to deprive plaintiff of compensatory returns from her lands, it becomes apparent that she is entitled to some remedy, either by an action at law for damages or by relief in equity. She has chosen the latter remedy, and prays special and general relief. It therefore devolves on us to determine whether she has selected the proper forum, and, if so, what relief may be granted.

The circuit court concluded that, upon the facts averred, the only relief permissible is by an action at law for the recovery of damages for the injury sustained by the plaintiff. Ordinarily, such action affords an adequate and usually the proper remedy. Courts generally so hold. *Ammons* v. *South Penn Oil Co.,* 47 W. Va. 610; *Harness* v. *Eastern Oil Co.,* 49 W. Va. 232; *Core* v. *New York Petroleum Co.,* 52 W. Va. 276; *McGraw Oil Co.* v. *Kennedy,* 65 W. Va. 595; *Hall* v. *South Penn Oil Co.,* 76 S. E. (W. Va.) 124; *Kellar* v. *Craig,* 126 Fed. 630; *Doddridge Oil & Gas Co.* v. *Smith,* 154 Fed. 970; *Harris* v. *Oil Co.,* 57 Ohio 118.

But most, if not all, of these decisions except cases wherein fraud is charged and proved; equity being adequately endowed with jurisdiction to deal with, and grant relief against, fraudulent conduct, for relief from which there is not adequate remedy at law. *Young* v. *Oil Co.,* 194 Pa. 243; *Colgan* v. *Oil Co.,* 194 Pa. 234; *Harness* v. *Eastern Oil Co., supra; Core* v. *New York Petroleum Co., supra; Hall* v. *South Penn Oil Co., supra; Guffey* v. *Oliver, supra;* Archer on Oil and Gas, 439, 444.

The phrase, "adequate remedy at law", is often misinterpreted. "The controlling question is not, has the party a remedy, but is that remedy fully commensurate with the necessities and rights of the parties under all the circumstances of the particular case"? Or, as stated otherwise, "equity has no jurisdiction where there is full, complete and adequate remedy at law". *Sinclair* v. *Young,* 100 Va. 284; *Richmond Railroad Co.* v. *Brown,* 97 Va. 26, 33. To defeat equitable cognizance, the legal remedy must be full, it must be complete, it must be adequate. If it does not reach the end intended and actually compel preformance of the duty, the breach of which is alleged, it can not be said to be fully adequate to meet the justice and necessities of the case. "To deny equity jurisdiction because of a remedy at law, the legal remedy must not be merely partial, but it must be adequate and as complete and efficacious as that given by equity". *Carney* v. *Barnes,* 56 W. Va. 581. "A remedy at law is not adequate, in the sense that it will deprive a court of equity of jurisdiction, unless it is as certain, prompt and efficient to the ends of justice as the remedy in equity". *Brewster* v. *Zinc Co., supra.*

It is therefore pertinent to inquire whether damages recoverable by plaintiff in an action at law would be commensurate as a redress against the wrong suffered by her through defendants' failure fully to perform the conditions of the lease, and at the same time secure performance of such conditions and relieve against the fraud charged. The difficulty, and, it may be said, the impossibility, of adequate proof of the extent to which she is actually injured presents an obstacle to the enforcement of the legal remedy. Who can approximate the quantity of gas or oil extracted from her lands through wells on the land of others adjacent to hers? That some was drained by such wells is reasonably certain. Some of them were located in close proximity to her line, one within sixty feet, one within one hundred and fifty feet, others further removed but probably within draining distance, all of them producing in paying quantities either oil or gas and some both. There is, as we may readily conclude, a general consensus of opinion among those engaged in the production of oil and gas as a business, that these substances may be

drawn from one tract through wells on other tracts, but that the distance is merely conjectural. But how much or how far, no one can answer. Again, no one does or can speak within any reasonable degree of accuracy as to the extent to which the gas pressure is diminished by the continuous flow of oil and gas through wells either on plaintiff's lands or on the lands of her neighbors. That drainage of oil and gas and diminution of gas pressure have in fact resulted is inevitable and reasonably certain. But the extent and the injury resulting therefrom are not, from the very nature of the case, even susceptible of definite information. Yet it is a matter of general knowledge that every intelligent operator attaches very great importance and value to the gas pressure in the production of oil and the delivery of gas to the market. The gas, when properly confined in the well, and in the conduit leading to the market, under strong pressure, forces itself to the place of consumption. In other words, with proper appliances it is self-marketing. Unless forced to the surface by the gas pressure behind it, oil generally will not flow. It must then be pumped—an expensive operation. When these effects are fraudulently accomplished, equity will properly assume and maintain jurisdiction at the suit of the person whose rights are thus injuriously prejudiced. See the authorities already cited.

The cases in which, because of a supposed adequate remedy at law, relief in equity has been denied upon allegations similar to those contained in the bill, do not meet general approval, and therefore are not satisfactory. Most of them say that *ordinarily* the remedy is by an action at law. All of them exclude from the holding cases wherein fraud is charged and proved. Judge BRANNON, in *McGraw Oil Co.* v. *Kennedy,* 65 W. Va. 595, said: "I have never been reconciled to the doctrine that for failure to drill additional wells the lessor must sue at law for damages, and equity will not cancel, unless for draining from nearby territory and thus exhausting oil in the leasehold involved. I have asked, how many actions must the landlord bring? How can damages be measured? Who can see into the depth of the earth"? There are, in fact, many cases sustaining jurisdiction in equity to cancel an oil and gas lease, in lieu of specific performance of its

implied covenants for diligent operation and protection of the lines. *Brewster* v. *Zinc Co., supra; Coffinberry* v. *Sun Oil Co., supra; Kleppner* v. *Lemon,* 176 Pa. 502, 197 Pa. 430, 198 Pa. 581, 35 Atl. 109; *Gadberry* v. *Gas Co.,* 162 Ind. 9; *Buffalo Oil Co.* v. *Jones,* 75 Kan. 18; *Collins* v. *Oil Co.,* 85 Kan. 483; *Day* v. *Pipe Line Co.,* 87 Kan. 617; *Powers* v. *Bridgewater Oil Co.,* 238 Ill. 397; *Acme Oil Co.* v. *Williams,* 140 Cal. 681; Archer on Oil and Gas 439. See also *Guffey* v. *Oliver,* 79 S. W. (Tex.) 884; *Monaghan* v. *Mount,* 36 Ind. App. 188, 74 N. E. 579; *Jones* v. *Mount,* 166 Ind. 570, 77 N. E. 1089.

Here, according to the bill, for a period of almost five years preceding suit, and presumably continuously thereafter, from the one well drilled, the Carbon company has produced gas in great quantities from plaintiff's land and from wells on contiguous lands drilled and operated. It, or its officials or controlling shareholders, acting in pursuance of a conspiracy, and therefore fraudulently, have, during the same period, produced from her lands both oil and gas in paying quantities, at high pressure, through such wells on adjacent premises. Thus, the defendant Carbon company, under the cloak of an agreement, has, by its failure to perform the conditions of the lease, in effect and in fact intentionally withheld development of plaintiff's lands, in direct violation and disregard of plaintiff's property rights in the oil and gas underlying her lands, the existence of one or both of which therein is reasonably assured from developments on hers and neighboring lands. Thus, a situation appears wherein, by defendants' conduct, has occurred an impairment of valuable property, resulting in irreparable injury, and demanding a measure of relief not available at law.

The conclusion therefore is that the decree of the circuit court is erroneous. Instead of sustaining, it should have overruled, the demurrer, and on final hearing, upon proper pleadings and proof, granted relief, if clearly warranted by the facts and circumstances then established, in view of the principles herein announced and there governing courts of equity. Such relief may be by a complete or a partial cancellation of the lease, other decisions if any to the contrary notwithstanding. If partial only, an acreage around the well

heretofore drilled, sufficient for its reasonable operation, may be assigned the Carbon company.

We therefore reverse the decree, overrule the demurrer, and remand the cause for further proceedings therein as directed.

*Reversed and Remanded.*