## UPDEGRAFF v. UNITED FUEL GAS CO. et al.

### No. 6294.

Circuit Court of Appeals, Sixth Circuit.

Nov. 10, 1933.

J. C. Nicholson, of Columbus, Ohio, for appellant.

Harold A. Ritz, of Charleston, W. Va. (B. J. Pettigrew, of Charleston, W. Va., R. W. Cummins, of Pittsburgh, Pa., and Eagleson & Laylin, of Columbus, Ohio, on the brief), for appellees.

Before HICKS, HICKENLOOPER, and SIMONS, Circuit Judges.

SIMONS, Circuit Judge.

The appellant, as plaintiff below, sought by bill in equity to cancel a gas and oil lease on lands in West Virginia, and to recover certain sums claimed as compound interest on rentals, and as damages for failure to protect her oil and gas deposits against drainage. She appeals from a decree below in favor of the defendants.

The first question relates to whether there was reasonable development of the leased property. The lease was entered into April 26, 1909, to remain in force for ten years, and as long thereafter as oil or gas, or either of them, is produced from the land. It provided for rental of $416 for each three months of delay in completing a well on the premises, and completion of each well was to operate as liquidation of rental during the remainder of the term on five hundred acres. From every oil well developed the lessor was to receive a royalty of one-eighth of the oil in the pipe line, and for each gas well a rental of $250 per year.

The lease originally ran to the Hope Natural Gas Company. It assigned in 1910 to

appellee South Penn Oil Company, the latter in turn assigning the gas rights thereunder to appellee United Fuel Gas Company. No drilling was done until July, 1913, when a well, through mistake, was drilled on property not covered by the lease, and proved dry. Productive drilling did not occur until April, 1915, when an oil well was brought in by the South Penn Company, followed by a second oil well on March 10, 1916. Nothing further took place in connection with the lease, although royalties and rentals were promptly paid, until January, 1925, when the plaintiff demanded that defendants further develop the land. In response two additional wells were sunk in 1925 by the gas company, one in August and one in December. Both proved to be productive of gas. Early in 1926 the plaintiff made a second demand upon the defendants for further development, and, deciding they would not comply, instituted her suit in March of that year. Since the beginning of the suit three additional gas wells have been drilled by the gas company, one in 1927 and two in 1928. All three are productive.

The lease is silent as to the amount of development required of the lessees, and contains no forfeiture clause. The plaintiff relies upon an implied covenant for reasonable development. Assuming that such covenant must be read into the contract, we have reviewed the evidence, and note the sharp conflict as to whether under all of the circumstances the lessees performed. The plaintiff claims that the tract is located in proven oil and gas territory; that more wells should have been drilled; that there is probability of further oil in the land; that in proper development only eight to ten acres should be set off around each oil well; and that the property, if relieved of the present lease, could be re-leased upon royalty to producers who would further develop. In reply, the defendants produced a large number of witnesses, including three experts having no connection with the parties to the suit. Evidence was offered that the property, in view of existing conditions, had been thoroughly and fully developed; that the South Penn Company had not realized, and in all probability would never realize, the amount of its investment in the oil wells; that conditions do not justify further drilling for oil; that the quantity of gas is comparatively small, uncertain, and sporadic, the rock pressure rapidly declining; that the total investment of $125,000 would never be recovered from the oil and gas unless economic conditions materially change and the price of oil and gas materially increases; that the southwestern portion of the tract is the only part on which there is any likelihood whatever of oil, and that production from existing wells on the land itself and those in its vicinity show that further drilling of oil wells is entirely unjustified; and that under all of the conditions the development more than constitutes what prudent operators in the exercise of sound business judgment could be expected or required to make.

The District Judge made findings of fact, and concluded that the plaintiff had failed to establish her right to the relief prayed for in respect to cancellation. The burden was upon the plaintiff to establish failure of performance of the implied covenant for reasonable development. We have ourselves weighed the evidence, as it is in such cases our obligation to do, Laursen et al. v. Lowe, 46 F.(2d) 303 (C. C. A. 6), and have concluded there was no error in the findings below. Were the issue in doubt, we would give much weight, and rightly so, to the opinion of the trial judge, who saw the witnesses upon the stand and heard them testify.

In arriving at its legal conclusion, the court below applied the rule, apparently well established in the West Virginia courts, that the judgment of an operator under a lease such as is here involved, exercised in good faith and not arbitrarily, will control as to the diligence with which, and the extent to which, wells should be drilled upon a given property, relying upon Steel v. American Oil Development Company, 80 W. Va. 206, 92 S. E. 410, L. R. A. 1917E, 975; Jennings v. Southern Carbon Co. et al., 73 W. Va. 215, 80 S. E. 368; Id., 81 W. Va. 347, 94 S. E. 363; Allen v. Colonial Oil Co., 92 W. Va. 689, 115 S. E. 842. Without deciding whether the interpretation of the contract involves the application of a rule of property so as to constitute the holdings of the court of last resort in West Virginia, a rule of decision binding upon us, we yet find these cases highly persuasive, and see no error in the court's application of the law there stated.

Other considerations support the conclusion that the District Judge was right in his finding that there was reasonable diligence in the development of the property. The lessee in executing the lease, in a sense, applied her own yardstick to what should constitute reasonable development, and reserved her own remedy for failure to perform. The lease required the defendants to pay a delayed rental of $416 in advance for each three months of delay in the completion of the first well, and it also provided that the completion of

each well should operate as liquidation of rental during the remainder of the term upon five hundred acres of the property. At this rate four to five wells would have completely liquidated the delay rentals. The defendants drilled seven. While this may not be conclusive upon the rights of the plaintiff or the obligations of the defendants, it throws some light upon what was in the minds of the parties on the question of development. There is also the further circumstance to be noted that from April 26, 1909, to January, 1925, a period of nearly sixteen years, the plaintiff acquiesced without complaint in the rate and manner of development. During that time but three wells had been drilled, one of them being dry and on the wrong property. The plaintiff was apparently satisfied with her royalties and rentals. She had made her contract, and we see no reason now why she should not abide by her contemporaneous interpretation of it. No claim is made of mistake, nor is reformation sought, and since her long acquiescence five additional gas wells have been drilled, and are producing.

White v. Green River Gas Company, 8 F.(2d) 261, 262, decided by this court, is not authority for plaintiff's position. There was in that case no development within the stated term to operate as an extension of lease for "as much longer thereafter as oil and gas is found thereon," and the equitable problem involved was whether the lessor was estopped to seek cancellation by the acceptance of gratuitous royalties which the lessee was not obliged to pay, and whose payment the lessor could not compel. Compare J. B. Gathright Land Co. v. Kentucky-West Virginia Gas Co., 65 F.(2d) 907 (C. C. A. 6). Here there was definitely an extension of term by production and sale of both gas and oil, and plaintiff does not base her claim to relief upon the expiration of the minimum ten-year term. There was no error in the findings or conclusions of the District Court on the subject of cancellation.

The so-called second cause of action is based upon the court's failure to allow compound interest on rentals reserved, when, through mutual mistake, the parties regarded the first well as liquidation of rental for five hundred acres, though in fact the well was located upon another tract. It seems clear that the mistake was an honest one, and open to discovery by either party. When it was discovered, after commencement of suit, the defendants promptly paid the sums which were delinquent, together with simple interest. We find no error in the court's finding and no abuse of discretion in failing to penalize the defendants when each of the parties was equally at fault.

The third cause of action is for recovery of damages caused by drainage of oil and gas from the plaintiff's property, which it is claimed should have been prevented by the digging of offset wells. This claim is too speculative to warrant consideration. The evidence in support of it is vague and indefinite—the plaintiff herself concedes it to be meager. We think the court was not in error in denying recovery on this ground.

The decree below is affirmed.