CASE 17.—ACTION BY S. R. COLLIER, AND ANOTHER AGAINST HAZEL GREEN OIL & GAS CO. FOR TRESPASS ON LAND.—Oct. 29.

## Hazel Green Oil & Gas Co. v. Collier, &c.

Appeal from Morgan Circuit Court.

M. M. REDWINE, Circuit Judge.

Judgment for plaintiffs, defendant appeals—Affirming.

Mines and Minerals—Leases—Construction—"Provided Wells are Completed During Said Term."—A lease of land was for the term of three years and as much longer as oil and gas were found on the land, provided wells were completed during the term of the lease, which also stipulated that, if gas was found in sufficient quantities to market the same, the consideration should be $100 a year for each well as long as gas from such well was marketed, and that the lessee should sink a test well on the land within one year. Held, that the expression "provided wells are completed during said term" meant that other wells were to be completed during the term beside the test well, and that the mere sinking of a test well during the term, without marketing the gas found in it, did not entitle the lessee to an extension of the term beyond the three years, and an agreement by the lessee to furnish the lessor with gas from the test well in consideration of a release from the

Hazel Green Oil & Gas Co. v. Collier, &c.

payment of any royalty while he was using the gas did not excuse it from its obligation to put down other wells.

HAZELRIGG, CHENAULT & HAZELRIGG for appellant.

McGUIRE & McGUIRE of counsel.

## POINTS AND AUTHORITIES CITED.

1. Vested interest. (Steelsmith v. Gartlan, 45 W. Va., 22; Huggins v. Daley, 99 Fed., 606; Oil Co. v. Fretts, 152 Pa., 451; Oil Co. v. Gas Co., 51 W. Va., 583.)

2. Distinction between forfeiture and abandonment. (Thornton on Oil & Gas, sec. 137, p. 160.)

3. Forfeiture. (Thornton on Oil & Gas, p. 189; Vandevoort v. Dewey, 32 Hun. (N. Y.), 68; Marshall v. Oil Co., 198 Pa. St., 83; Klepner v. Lemon, 197 Pa. St., 430; Gas. Co. v. DeWitt, 130 Pa., 254; Harris v. Oil Co., 57 Ohio St., 118; Aruntage v. Mt. Sterling Oil & Gas Co., 25 Ky. Law Rep., 2262.)

4. Abandonment. (Karns v. Tanner, 66 Pa. St., 297; Oil Co. v. Gas Co., 51 W. Va., 583; Thornton on Oil & Gas, sec. 183, p. 215.)

5. Estoppel—Waiver. (Bispham's Equity, 181; Steimer v. Marks, 172 Pa., 400; Thornton on Oil & Gas, 182.)

6. Admission of evidence. (Erroneous Admission of Evidence; Erroneous Exclusion of Evidence.)

7. Instructions.

8. Method of trial.

9. Transfer to equity.

10. Demurrer.

ELI H. BROWN, Jr., & FINLEY HOGG for appellees.

It is contended by the appellees:

1. That the appellant had abandoned the lease executed to it by Wilson (which is on page 39 of record.)

2. That said lease from Wilson to appellant expired February 23, 1906, and all rights of the appellant thereunder ceased on that day.

3. That these contentions, both or either, being true, Wilson had a right to execute the lease to Collier, and the molestation of Collier's operations was a trespass.

## AUTHORITIES CITED.

Bettman v. Harkness, 36 L. R A., 572; Western Penn. Gas

Co. v. George, 16 Pa., 47; Brown v. Fowler, 63 N. E., 76; Parish Fork Oil Co. v. Bridgewater Gas Co., 59 L. R. A., 367; Thornton on Oil & Gas, 53; Berry v. Frisbie, 86 S. W., 558; Bay State Petroleum Co. v. Penn. Lubricating Co., 87 S. W., 1102; Huggins v. Dailey, 48 L. R. A., 320; Rorer Iron Co. v. Trout, 83 Va., 397; Ray v. Natural Gas Co., 138 Penn., 589; James Ray v. Western Penn. Nat'l Gas Co., 12 L. R. A., 191; Galey v. Kellerman; Willa v. Manufacturers Natural Gas Co.; Guffy v. Hukill, 8 L. R. A., 759; Gadbury v. Ohio & Indiana Cons. Gas. Co., 62 L. R. A., 898; Brewster v. Lanyon Zinc Co., 140 Fed. Rep., 801; Parish Fork Oil & Gas Co. v. Jennings, 84 Fed., 839; Bryan on Law of Petroleum & Nat'l Gas, p. 179.

OPINION OF THE COURT BY JUDGE HOBSON—Affirming.

On February 23, 1903, Holly Wilson made a lease to the Hazel Green Oil & Gas Company. It put down no wells upon the property during the first year of the lease, but paid Wilson a royalty as provided therein. In the second year of the lease it did put down a well that struck gas about July 1, 1904. The well flowed about 200,000 cubic feet of gas a day. It did not market the gas, or make any use of it, but simply capped the well in. It had struck, before that, gas on a neighboring farm in a well that flowed over 700,000 cubic feet of gas a day. This well it had turned into its mains, and supplied all of its customers. Wilson then complained that they were not using his gas, and it was agreed between him and the directors that the company would furnish him, at cost, the piping and some other articles so that he could run gas to his house and use it for heating and lighting purposes, if he would release the company from paying any royalty while he was thus using the gas. He agreed to this, and did run the gas to his house, and used it from that time on. Before this was done, the company had torn down its derrick

and moved it to another place, and was doing no further work on the land. Nothing further was done until the summer of 1906, when Wilson made another lease, to S. R. Collier. The latter entered upon the land, and was preparing to bore for gas, when the Hazel Green Oil & Gas Company entered and hauled off his lumber and other things, preventing him from going to work. Thereupon this suit was brought by him and Wilson against the Hazel Green Oil & Gas Company to recover for the trespass. Upon the trial in the circuit court, the plaintiffs recovered a judgment for $100, and the defendant appeals.

The only question we deem it necessary to consider on this appeal is whether the lease to the Hazel Green Oil & Gas Company was in force at the time the lease of Collier's was made, for, if its lease had terminated, the lease to Collier was valid, and it had no right to interfere with Collier in his work upon the land. The lease made to the Hazel Green Oil & Gas Company, so far as material, is in these words: "Memorandum of agreement made and entered into this 23d day of February, A. D. 1903, by and between Holly Wilson and Angeline Wilson, his wife, of the county of Morgan and State of Kentucky, of the first part, witnesseth: That said party of the first part, for the consideration of one dollar, the receipt of which is hereby acknowledged, and the covenants and agreements, rents and royalties hereinafter mentioned, has granted, demised and let, unto the party of the second part, their heirs and assigns for the purpose and for the exclusive right of drilling and operating for petroleum oil, and gas, to have and to hold for and during the term of three years from date hereof, and as much longer as oil and gas is found, provided wells are completed during said term,

as hereinafter provided, with rights necessary to do those things and the right to assign and subdivide a certain tract or parcel of land (here follows description). The said parties of the second part, in consideration hereof, agree to give to the party of the first part one-eighth of all the petroleum oil obtained or produced on the premises herein leased, to deliver same in tanks or pipe lines to the credit of the party of the first part. It is further agreed that if gas is found in sufficient quantities to market same, and be piped away from the premises to such market, the consideration in full to the party of the first part shall be $100 per annum for each well as long as the gas from said well is marketed. The said parties agree to sink a test well on the above described land within one year, and also agrees to commence operations in the county inside of six months. This lease to become void if well is not completed within said time, unless said parties shall pay as rentals for said premises at the rate of ten cents per acre, per year, during the time drilling is delayed. The second parties may at their option pay any rentals monthly. And it is further agreed that the first party, in consideration of the agreement of the second party herein contained, agrees that the second party, his heirs, successors or assigns, may at any time after the payment of said rentals due, surrender up this lease by delivering the same back to the first party, his heirs, or assigns, indorsed with the surrender thereof and signed by the said second party, and be thereby forever discharged and released from all moneys due, or to become due, and from all obligations accrued or that may accrue under this lease, and thereupon this lease shall remain null and void and of no further value, and whatever moneys shall

have been received by the first party herein shall be retained by him as full and stipulated damages for the nonfulfillment of the conditions of this lease. Which is agreed by the parties hereto as the consideration moving from said second parties to their rights under this lease for the first (party) named herein."

As the lease was made on February 23, 1903, if it was only a lease for three years, it expired on February 23, 1906. It will be observed that the lease is for "the term of three years from date hereof, and as much longer as oil and gas is found, provided wells are completed during said term, as hereinafter provided." It will also be observed that the lease provides that if gas is found in sufficient quantities to market the same, and be piped away from the premises to such market, the consideration in full to Wilson shall be $100 a year "for each well as long as the gas from said well is marketed." It is also provided in the lease that the gas company is to sink a test well on the land within one year. Reading these provisions of the lease together, we think it manifest that the writing draws a distinction between the test well, which it provides for, and other wells. In other words, the expression "provided wells are completed during said term," means that other wells are to be completed during the term besides the test well, and that the mere sinking of a test well during the term, without marketing the gas found on it, does not entitle the lessee to an extension of the term beyond the three years. Wilson was to have a royalty of $100 a year on each well. The more wells were sunk, the greater would be his royalty. And this clause also shows that the parties contemplated the sinking of other wells than the test well. The test well was

to be sunk in one year, or the lessee was to pay the lessor yearly a rental of 10 cents an acre. It was also to pay him a royalty of $100 a year for each well as long as gas from the well was marketed, and the lease was for a term of three years and as much longer as gas was found, provided wells were "completed during said term."

What occurred between Wilson and the directors would excuse the company from the payment to Wilson of any royalty on the test well, but it did not excuse it from its obligation to put down other wells. The gas was struck in July, 1904. After striking the gas, it pulled down its derrick and moved off, and for two full years did nothing on the land. It did not market any of the gas from the well which it had bored, and had made no effort to put down other wells, or to market any gas from the land. The words, "as much longer as oil and gas is found," are to be read with the words, "provided wells are completed during said term." The term is the three years from the date of the lease just above provided for, and so, to entitle the lessee to any longer term than three years, it was incumbent upon it that wells should be completed during that term. No well, however, but the test well, was put down. It therefore failed to comply with the conditions of the lease, and its term ended with the expiration of the three years. To give the contract any other construction would be to make it binding upon Wilson indefinitely, when it imposed no substantial obligation upon the lessee. It could put down no wells after the test well was sunk, and escape all payment of royalty except on the gas from that well.

Under the facts, the lease to the Hazel Green Oil & Gas Company had expired. The circuit court in

effect so instructed the jury, and in this there was no error.

Judgment affirmed.

On petition for rehearing and extension of opinion.

The court, for response to petition for rehearing and extension of opinion, is of the opinion that the rehearing should not be granted, nor should the opinion be extended, for the reason that the question of the appellant's right to remove from the appellee's land the property or fixtures placed thereon by it was not in issue in the action, or passed upon by the court.

Therefore the petition for rehearing and extension is overruled.