## GROUND FOR CANCELLATION OF LEASE AS TO UNDRILLED PORTION OF OIL LANDS.

COFFINBERRY v. THE SUN OIL CO.

Decided, June 16, 1903—68 Ohio State, p. 488.

*Oil and Gas Lease—Action by Lessor Against Lessee or Assignee—Failure of Lessee to Drill Wells as Agreed—Neglect to Protect Lines of Leased Property—Migratory Nature of Oil—Runs from Lessor's Land to Adjacent Land—Loss to Lessor—No Remedy at Law—Action for Cancellation of Lease—Specific Performance—Equitable Proceedings—Law of Contracts.*

1. Where a petition filed by the lessor and owner of land consisting of about one hundred and sixty acres against the lessee or his assignee of the lease, on or about January 8, 1901, alleges in substance that the plaintiff, lessor, on or about May 29, 1890, executed said lease for a term of five years and as much longer as oil or gas should be found in paying quantities, whereby the lessee obtained the exclusive right to produce oil and gas on the leased

premises; and that the lease further provides that one well should be completed thereon within one year from the date of the lease, which condition has been complied with and a paying well completed; and which further alleges that the lessee covenanted that if the first well should be a paying well, he would drill as soon thereafter as he could reasonably do so, a sufficient number of wells to fully develop said lands, and deliver to the lessor one-sixth of all the oil produced therefrom; and that the lessee, after taking possession and completing the first well assigned the lease to the defendant, who took possession and drilled two additional wells, the three being in one corner of the premises, and also drilled two wells on one side thereof, and all paying wells, and being completed prior to July, 1898; and further, that defendant has ever since refused and still refuses to further drill and develop or test said lands for oil or gas, or permit the plaintiff, lessor, or any one for him to do so; and which further alleges, that the defendant neglects to protect the exterior lines of the leased premises from several producing oil wells, already drilled and in operation on lands of others adjoining lands of the plaintiff; and that to properly develop the leased premises, at least twenty-six additional wells should be drilled thereon, which could have been done within three years from the date of the lease; and that owing to the migratory nature of oil and the impossibility of proving the presence and amount of oil in the lands except by drilling, plaintiff has no adequate remedy at law—such petition states a good cause of action for the cancellation of the lease as to the undrilled portion of the premises, and it is error to sustain a general demurrer thereto and dismiss the petition of the plaintiff.

2. Upon a cause of action, containing such facts, followed by a prayer for specific performance, and a further prayer in the alternative, "for such other and further relief in the premises as equity and good conscience require," a court of equity may decree the cancellation of the lease as to the undrilled portion of the leased premises in lieu of specific performance.

Error to the Circuit Court of Wood County.

The plaintiff in error, as plaintiff in the lower court, on January 8, 1901, filed the following amended petition:

"The plaintiff, Henry D. Coffinberry, is the owner of the following lands: The south half (½) of the southwest one-fourth (¼) of section eighteen (18) and the north half (½) of the northwest one-fourth (¼) of section nineteen (19) in Portage township, Wood county, Ohio, and containing in all about one hundred and fifty-eight (158) acres. On May 29, 1890, James M. Coffinberry, the father of plaintiff, and from whom he derives his title, was the owner of said lands, and on that day executed and delivered to Robert Miller a lease of said lands in which they were

designated as being bounded on the north by lands of William Kinney and G. W. Simmons; on the east by lands of Robert Miller and George Daughterman; on the south by lands formerly owned by Larwill and Ensminger, and on the west by lands of Robert Miller and William Kinney, and containing one hundred and fifty-eight (158) acres, more or less, a copy of which lease is hereto attached and made a part hereof.

"By the terms of said lease, said James M. Coffinberry granted to said Robert' Miller the exclusive right to produce petroleum and gas on said lands for the period of five years from the date thereof, and as much longer as oil or gas should be found in paying quantities thereon.

"As the consideration for said right and privileges, the said Miller agreed and promised to deliver to said lessor, his heirs and executors, the one-sixth (1-6) of all the oil which might be produced on said lands; and should gas be found therein in sufficient quantities to justify marketing the same, to pay to the lessor the sum of one hundred dollars ($100) per annum for the gas from each well, so long as gas could be sold therefrom.

"Said Miller further agreed in said lease to complete a well on said lands within one year from the date of said lease, or to pay for further delay a yearly rental of one hundred and sixty dollars ($160) until such well should be completed.

"Said Miller further agreed that if said first well should be a paying well, he would drill, as soon thereafter as he reasonably could do so, a sufficient number of wells to fully develop said lands.

"Said Miller took possession of said lands under said lease and within one year from the date thereof drilled the first well thereon mentioned in said lease, which proved to be a paying well, and afterward undertook to sell and transfer said lease to the defendant, a corporation, which took possession of said lands and is still in possession thereof.

"There have been drilled on the first tract above described, three wells and no more, which wells are located in the northeast corner of said tract, produce oil in paying quantities, and were drilled at the following times: One in April, 1892; one in November, 1893; one in August, 1894.

"There have been drilled on said second tract of land above described, two wells and no more, which are located on the east side thereof, and the same were drilled as follows: One in June, 1893, and one in June, 1898, and both of which produce oil in paying quantities.

"There have been drilled on lands adjoining plaintiff's said lands and within an average of 200 feet from the exterior lines of his said lands, nine wells, seven of which are now being operated and are producing oil in paying quantities; so that plaintiff's lands are not properly protected against drainage of oil therefrom through wells on adjoining lands.

"The defendant has operated and still operates said wells at irregular intervals, but refuses to operate the same regularly.

"The sole object and purpose of said James M. Coffinberry in granting said lease and rights and privileges, was to have said lands properly tested, drilled, developed and operated, to the end that he and his successors in the title might receive and have the benefit of the one-sixth of the oil underlying said lands and the gas rentals prescribed in said lease, if gas should be found therein; that the one-sixth of the oil underlying said lands, and of which plaintiff is deprived by reason of the conduct of the defendant complained of in this petition, is exclusive of interest and the costs of this action, of the value of not less than $3,000.

"In order to properly test and develop said lands for oil and gas purposes, there should have been, and still should be, at least twenty-six additional wells drilled thereon. That the time required for drilling and completing a well on said premises is less than thirty days, so that all of said wells necessary to a proper and reasonable development of said lands could reasonably have been drilled, and should have been drilled, within three years from the date of said lease. The defendant not only refuses to drill such additional wells or any of them, but refuses to permit the plaintiff, or any person authorized by him, to drill upon the undeveloped portion of said lands, unlawfully and wrongfully claiming the right to hold and control all of said lands without further development and without compensation to the plaintiff other than the very small royalty which he receives from the irregular operation of the wells now located thereon, and which amounts on the average to about $30 per month.

"The defendant in fraud of the rights of the plaintiff, neglects and refuses to drill any further wells on said lands or to protect the same from drainage through adjoining lands, and fraudulently deprives the plaintiff of the emoluments and profits contemplated and intended by the parties to said lease, and to which he is by its terms entitled; which emoluments and profits of which plaintiff is to be deprived are exclusive of interest and the costs of this action, of the value of not less than $3,000.

"That by reason of the facts above stated the plaintiff is effectually prevented from receiving the benefits and emoluments which would result to him from a proper development and operation of said lands for oil purposes, to his great damage and injury.

"The plaintiff has no remedy at law whereby he can be adequately or fairly compensated for said damage and injury for the reason that it is impossible to determine the amount of oil which has been in said lands during the existence of said lease; or which is now therein; or how long the same may or may not remain therein; said oil being not stable and permanent in its location, but fleeting and transitory in movement, and liable to escape into other lands upon which operations for the extraction of oil are being conducted.

"That plaintiff has opportunities to, and would lease said lands for oil purposes to other persons, who would properly develop and operate the same, were he and they not prevented from so doing by the aforesaid wrongful and unlawful claims of the defendant, which constitute and are a cloud upon the plaintiff's title to said lands and a bar to his possession and enjoyment thereof.

"He therefore prays: (1) That the defendant be required, upon proper conditions to be prescribed by the court, to regularly and properly operate said wells; (2) that the defendant be required to drill the number of wells required to properly develop said lands in accordance with the terms of said lease, or to permit the plaintiff to operate the undeveloped portion of said premises; (3) that he may have such other and further relief in the premises as equity and good conscience require.　　　　"TROUP & RAMSEY,
　　　　　　　　　　　　　　　　　　"Plaintiff's Attorneys."

The defendant demurred generally to this petition, which demurrer was sustained by the court of common pleas. On appeal to the circuit court, the demurrer was there sustained and the amended petition dismissed. Error is prosecuted in this court to reverse the judgment of the circuit court.

*Troup & Ramsey* and *Troup & Truesdale,* for plaintiff in error.

*Baldwin & Harrington,* for defendant in error.

PRICE, J.; BURKET, C. J., SPEAR, DAVIS and SHAUCK, JJ., concur.

It is a familiar rule of practice that a general demurrer admits all facts which are properly pleaded, and for the purpose of testing the cause of action set out in the amended petition, the defendant by such demurrer, confesses the truth of the proper averments of that pleading.

Looking to the facts alleged, it is seen, that by the terms of the oil lease, there is but one condition upon which the lessor could declare a forfeiture of the lease, and that condition is that there should be a well completed by the lessee on the premises within one year from date of the instrument, or he should pay lessor one hundred and sixty dollars per annum for each year such well should be delayed.

This condition was complied with and one well was completed, so that from that point forward, there are no provisions by which the landowner may declare and enforce a forfeiture.

The other and material provision now is, that "if the first well shall be a good paying well, the tenant should drill a sufficient

number of wells to fully develop said territory as soon as he reasonably can do so."

It is alleged that the first well produced oil in paying quantities, and that the defendant, coming into possession and taking the place of the lessee as to the terms of the lease, drilled two more paying wells, these three being in the northeast corner of one tract, the last of the three having been completed in August, 1894; and that it drilled two paying wells on the east side of the other tract, one in June, 1893, the other in June, 1898.

Near the exterior line of these premises, wells have been drilled on adjoining lands, which tend to drain oil from the premises of plaintiff, and against which defendant has drilled no protecting wells. This condition of the premises, without effort to further test and develop the territory, had continued for several years before this action was commenced, and the defendant refuses to drill more wells, and refuses to permit the plaintiff, or any one for him, to drill and test the balance of the farm. It is charged also, that the defendant is neglectful of the five wells and operates them at irregular intervals.

Does the case stated in the petition entitle the plaintiff to any relief? If so, what shall it be? The plaintiff, by the terms of the lease, contemplated a fair and reasonable test of all his farm, and did not intend to incumber it with that instrument placed on record, merely to have one corner drilled, and two wells completed on one side of the premises; nor could the lessee or his assignee so understand the obligations therein created.

The case made against the defendant is one of persistent obstinacy and disregard of plaintiff's rights without any disclosed excuse. He has submitted to the wrong for several years, and sees no sign of a change of conduct on the part of the defendant.

We have no doubt that he states facts which entitle him to some relief in the courts.

He further says he has no adequate remedy at law, because of the transitory nature of oil, and the impracticability of proving the presence or amount of oil in his premises. In other words, a remedy in damages can not be established. This is admitted, not only by the demurrer, but also in the brief filed for defendant in error. Furthermore, that brief admits and concurs in plaintiff's claim, that for the same reasons, compensation can not be made by the court, in lieu of specific performance. Yet, the defendant contends against specific performance which is prayed for, and urges, as

no doubt was urged in the lower courts, that the subject matter of the controversy is not such as to justify the court in making a decree of that character. It may be that the lower courts held against the plaintiff on his petition, because a decree of specific performance would not close the controversy; that to compel the defendant to drill and test the territory would imply the retention of the case for supplemental orders and other proceedings which might become necessary in administering that form of relief. That view may be correct, and this court does not differ from the lower court on that point. But that view is no reason for sending the plaintiff out of court empty handed.

The question on the demurrer was not, necessarily, whether or not the plaintiff states a case which warrants or requires the court to decree specific performance of the terms of the lease, as asked in the first branch of the prayer; but is a cause of action stated which entitles him to relief in any form within the jurisdiction of the court, and consistent with the facts alleged?

It is a familiar rule, for which we have numerous precedents, that the ordering of specific performance is in some measure within the sound discretion of the court where it is asked, and there are many cases which disclose circumstances of inequality, hardship, or other considerations which lead to a refusal of the specific relief, and yet adequate justice is done in some other form in the same case, in order to avoid other actions and settle the rights of the parties. In some instances courts of equity, owing to the peculiar facts of the case on trial, have decreed performance in part and made compensation as to the remainder, and in others have refused the specific relief entirely, and made such decree as justice and equity would sanction. This is not a new doctrine of practice in actions at law, and certainly not in cases in equity.

In *Tiffin Glass Co.* v. *Stoehr*, 54 Ohio St., 157, this court held the following rule of practice:

"Where, on the facts stated in the petition, a plaintiff is entitled to a judgment for money, the fact that in his petition he claims the amount to be due him as *wages* on a contract of employment, instead of as *damages* for the breach of it, is not material to his right of recovery. A misconception of this kind must be disregarded in passing judgment upon the pleading."

In the course of the opinion, on page 163, Minshall, J., says:

"Under the liberal principles of our code, it can make no difference what he termed the number of dollars he conceived him-

self entitled to recover, provided that on the facts stated he was entitled to recover something. The judgment rendered was in fact for damages and not for wages; it was for what the plaintiff lost by the breach of the contract by the defendant. The plaintiff then did not mistake his remedy. He had but one, the civil action of the code. This simply required a statement of the facts on which he conceived himself entitled to a recovery of money from the defendant. The petition conformed to this requirement, and stated a cause of action. A prayer for relief is no part of a cause of action."

Again, in *Railway Co.* v. *Reynolds,* 55 Ohio St., 370, this court held to the same effect. The defendant in error in that case sued for breach of a contract in form of a ticket for passage on the railroad, and stated all the facts in his petition, and the recovery was for damages in ejecting him from the train. The recovery was affirmed in this court, the holding being that the facts showed a right of recovery for tort, and not merely a breach of contract.

Still later, in *Kerr* v. *City of Bellefontaine et al,* 59 Ohio St., 446, an action to recover for machinery and appliances sold and delivered to said trustees for use of the gas works, it is held in the fourth branch of the syllabus:

"A petition alleging a sale and delivery by plaintiff to such trustees of machinery and appliances for the use of such works and the non-payment of the purchase price therefor, though not alleging facts sufficient to entitle him to recover a judgment at law against the municipality, does allege a cause of action for the equitable appropriation of so much of the funds which have accrued or may accrue from the operation of the works as may be necessary to satisfy his just demand."

These citations are quite sufficient. We have said that the petition does state facts which entitle the plaintiff to equitable relief. What shall it be?

We are of the opinion that, if on the trial of this case, the averments of the petition are sustained by sufficient evidence, that in lieu of a decree for specific performance, the lease as to all undrilled lands of the plaintiff should be canceled and the cloud thereof removed, and that such would be the proper decree to make on the facts alleged in the petition.

The judgment of the circuit court is reversed; the demurrer to the amended petition is overruled, and the cause is remanded to the circuit court for further proceedings according to law.

*Judgment reversed.*