Matthias, J.
Although the lessors, the defendants in error, charge fraudulent conduct upon the part of plaintiff in error, Kachelmacher, the assignee of said lease, it is apparent that the case involves only the construction of the contract entered into between the parties. It is to be observed that the court of appeals does not include in the findings of fact any finding of fraud or of fraudulent conduct by-the plaintiff in error, and the conclusions of law are that there was an implied obligation upon the part of the lessee to drill one or more wells upon said premises, and that he should be required to *331 comply with such implied covenant or suffer a cancellation of the lease.
Fraud upon the part of plaintiff in error is not shown 'by the finding of facts nor disclosed by the record, nor does it appear that any inequity has been suffered by the defendants in error. It .is disclosed by the finding of facts that the drilling of each well in that vicinity cost about $10,000, that many "dry holes” were drilled, and that those which at any time were sufficiently productive to be regarded as paying wells very rapidly decreased in production. It is further shown that each well drained from fifteen to twenty acres, and hence, that if a well were drilled upon this tract, assuming it should be productive, it would draw only about five per cent, of its production from the premises of the defendants in error.
It is obvious that when the conditions and developments in that vicinity, shown by the record, are considered, the rentals actually paid the lessors are undoubtedly equal to, if not greater than, the royalty upon the value of the oil that would actually be produced from their own land, in the event a well were drilled thereon.
The defendants in error rely, with considerable confidence, upon the case of Coffinberry v. The Sun Oil Co., 68 Ohio St., 488, and Kleppner v. Lemon, 176 Pa. St., 502, but there is a very vital distinction between the leases involved, which a comparison will disclose. In the Coffinberry lease there was an express agreement to complete a well within a year, and a further agreement for additional drilling if the first well should be a paying well. The Klepp *332 ner lease likewise contained an express agreement that a well should be drilled' within a stipulated time. The decision in that case, however, rested upon a finding of fraud. In each of those cases the first or experimental well had been drilled, resulting in the production of oil in paying quantities, and action was brought to require a compliance with the further express covenant to continue drilling until the premises should be fully developed. Such was the express agreement in the Coffinberry lease, and there was no provision whatever for the payment of any sum as rental or otherwise in lieu of drilling. It was for failure and refusal to comply with such express covenant contained in the lease that cancellation was awarded.
In the lease in this case there is an express stipulation for the payment of rental in lieu of drilling, and the option is thus given the lessee to drill or pay rental in accordance with the terms of the contract. Surely the clause making such provision, which is set out in full in the finding of facts, cannot be otherwise construed or interpreted. The rights of the parties must be determined from their own contract. Under the clearly expressed terms of the lease, if the lessee does not drill he may still continue the lease in force by payment of the stipulated rental. Such matter being covered by the express terms of the written contract, no implication can arise in relation thereto inconsistent with, or in opposition to, such plain provision of the written contract. An implied covenant can arise only when there is no expression on the subject.
*333 Even if there be such implied covenant, as contended by counsel for the lessors, it cannot be made the ground of forfeiture. Under the express terms of this lease the right to declare a forfeiture arises upon the failure of the lessee to drill or pay rental, and, hence, forfeiture can be enforced only if the lessee neither drills nor pays the stipulated rental in accordance with the terms of the lease. Such cause of forfeiture being expressly mentioned, none other can be implied.
The facts disclosed by the record and appearing in the finding of facts of the court of appeals, indicate the reasons which probably moved the parties to agree upon the terms of this lease. That territory was what is called “wildcat” territory, being then undeveloped. The premises of the lessors consisted of less than an acre, while one well drains oil from fifteen to twenty acres. It must be concluded that the parties did not contemplate that more than one well should be drilled upon these premises, and, hence, the contract in reference to the drilling of this one well covers the whole subject-matter comprehended by this lease. The customary rental in that territory, at the time this lease was executed, was from twenty-five cents to one dollar an acre a year. It is fair to assume that the extraordinarily high rental stipulated, $50 a year, was agreed upon by the parties in lieu of an express covenant to drill and a clause requiring forfeiture for failure to do so, and that the lessors considered they would be amply remunerated by payment of the agreed rental.
*334 This lease, by its terms, requires a forfeiture unless a well is drilled within four months or rental paid within each and every year. The lessee did not drill, but did elect to and did pay the agreed rental. This court has heretofore held that under the provisions of a lease similar in terms to that now under consideration, the lessee has an option to complete wells or pay rental to keep the lease alive, and that under such terms the lessee may retain the lease by paying the stipulated rental, or may elect to permit the lease to lapse. Brown et al. v. Fowler et al., 65 Ohio St., 507; Van Etten et al. v. Kelly, 66 Ohio St., 605.
One of the terms of this lease is that the rental, “if the lessee elects to pay, the same may be paid direct to the lessors or may be deposited to their credit at The Miners and Merchants Bank, Nelson-ville, Ohio.” It appears from the finding of facts that payment of rental for the years 1910,' 1911, 1912 and 1913 was made by deposit with said bank in accordance with the terms of said contract. Although'the lease expressly provides for delay in drilling from year to year upon the terms stated, the record shows that the petition seeking cancellation was filed within a year after the execution of the lease and after payment of the rental for the first year had been made in the precise manner agreed- upon. Said payments having been made in strict accordance with the express terms of the contract, this was equivalent to payment to the lessors themselves. There was no agreement that such sum should be deposited with the bank named, to be paid to lessors upon some condition that *335 might develop, but under the terms of the contract payment, when made and accepted by the bank, was complete, and passed said sums of money effectually to the lessors and entirely beyond the authority and control of the lessee. Such fund became the property of the lessors, and they cannot, therefore, avoid the effect of such payment by refusing to withdraw the fund from the bank to which it was paid by their direction, it not appearing that any contrary instructions were given the bank by the lessors at any time. Such payment of rental, in accordance with the terms of the lease, serves to keep it in force during the year for which the rental was paid, and within that time an action for the cancellation of the lease could not be maintained.
The judgment of the court of appeals is reversed for error to the prejudice of the plaintiffs in error in its conclusions of law from the facts found. Judgment is entered for plaintiff in error. ■

Judgment reversed.

Nichols, C. J., Johnson and Donahue, JJ., concur.