## WHITE et al. v. GREEN RIVER GAS CO.

(Circuit Court of Appeals, Sixth Circuit. June 30, 1925. Rehearing Denied December 2, 1925.)

No. 4273.

**1. Mines and minerals ⬤⟿78(1)—Drilling for oil and gas held not a reasonable development, entitling lessee to an extension.**

Under an oil and gas lease covering 900 acres in wildcat territory for a term of five years, renewable "as long as oil and gas is found," providing for delivery of royalty from the oil and that, if gas was found in paying quantities, lessee should pay $100 each year for the product of each well while the same was being sold off the premises, lessee drilled two wells within the five years, each of which produced gas in considerable quantity, but without sufficient pressure to enable it to be marketed off the premises. Held that, construing the lease as authorizing an extension if oil "or" gas was found in paying quantities, the drilling of two wells in five years on so large a tract, and from which lessor derived no revenue, was not a reasonable development, which entitled lessee to an extension.

**2. Mines and minerals ⬤⟿78(7) — Court of equity may cancel lease in part.**

Where an oil and gas lessee has developed a portion of the leased premises with reasonable diligence, and has failed to develop the whole of the premises in accordance with the conditions of the lease, a court of equity is not required to decree cancellation of the entire

lease, but may do equity between the parties by permitting the lessee to hold and occupy the developed part, and canceling as to the remainder.

Appeal from the District Court of the United States for the Western District of Kentucky; Charles H. Moorman, Judge.

Suit in equity by R. A. White and Vertie W. White against the Green River Gas Company. Decree for defendant, and complainants appeal. Reversed and remanded, with directions.

This action was brought by appellants in the circuit court of Green county, Ky., for the cancellation of an oil and gas lease, except as to part of the leased land surrounding two gas wells that had been drilled thereon. On application of the Green River Gas Company it was removed to the United States District Court.

The lease in question is for a term of five years from its date, September 19, 1916, and "as much longer thereafter as oil and gas is found thereon." It further provides in part:

"First. Lessee agrees to drill a well upon said premises within one year from this date, or thereafter pay to lessors rentals as hereinafter provided until a well is completed or the property hereby granted is reconveyed to lessors.

"Second. Should oil be found in paying quantities, the lessee agrees to deliver to the lessors free of charge into tanks or pipe lines one-eighth part or share of all crude oil produced or saved from said premises.

"Third. Should gas be found in paying quantities, the lessee agrees to pay $100 each year for the product of each well while the same is being sold off the premises. The lessor to have gas free of cost to heat and light one dwelling house during the same time as the well to be used, at the lessor's risk."

The lease was originally made to Geo. D. Morrison, under whom the Green River Gas Company claims by successive assignments. It further appears, from an amended bill of complaint tendered, but not permitted to be filed, that the Green River Gas Company has assigned this lease, or a material interest therein, to the Tampico Gas Company, but, as leave was refused plaintiff to file this amended bill, that company has not been made a party defendant to this action. It further appears from the bill of complaint that the 900 acres covered by this lease consists of several tracts of land separately acquired, but adjacent and contiguous to each other.

Within one year from the date of the lease a gas well was drilled on what is known as the "Bill White tract," consisting of 200 acres. This well produced upon open flow 4,000,000 to 5,000,000 cubic feet of gas a day, but the pressure is slightly less than 40 pounds. Four years later a second well was drilled on what is known as the "Home tract," consisting of 427 acres. This well will produce about half as many cubic feet of gas as the first well, but the pressure is also very low. While no gas was sold from these wells, either on or off the premises, the stipulated rental of $100 a year was paid upon each well up to about the middle or last of April, 1923. The five-year term named in the lease expired September 19, 1921. The petition to cancel the lease, except as to a small tract of land surrounding each of these wells, was filed May 29, 1922, and was based upon the claim that the lessee had failed to develop the leased property in accordance with the terms of the agreement and the understanding and intention of the parties.

It is claimed on behalf of the defendant that the property was located in wildcat territory, that there was no market for gas in that neighborhood, and that the pressure was so low it could not be transported to distant markets. It is also claimed that since the commencement of this suit arrangement has been made to establish a carbon-black factory for the purpose of utilizing this gas in the manufacture of carbon-black. The court held that, as the lease was a unit, it could not be canceled as to part only of the leased land; that the plaintiff's only remedy for violation of any part of the terms of this lease was by suit at law for damages— and dismissed plaintiff's bill of complaint without prejudice to the right of the plaintiff to bring an action at law.

A. E. Willson, of Louisville, Ky. (Noggle & Graham, of Greensburg, Ky., and John P. Haswell, of Louisville, Ky., on the brief), for appellants.

Leo T. Wolford, of Louisville, Ky., and Wm. Chapman Revercomb, of Charleston, W. Va. (Wm. Marshall Bullitt and Bruce, Bullitt, Gordon & Laurent, all of Louisville, Ky., and Koontz, Hurlbutt & Revercomb, of Charleston, W. Va., on the brief), for appellee.

Before DENISON, DONAHUE, and KNAPPEN, Circuit Judges.

DONAHUE, Circuit Judge (after stating the facts as above). This lease does not

differ from the ordinary oil and gas lease, except that it provides that the lease may be extended beyond the term of five years, so long as oil and gas are found on the premises. The usual provision in leases of this character is "as long as oil or gas is found in paying quantities." The second provision in the lease, however, provides that, "should oil be found in paying quantities the lessee agrees to deliver, etc." The third provision is: "Should gas be found in paying quantities, the lessee agrees to pay $100 each year for the product of each well while the same is being sold off the premises."

Construing these two provisions in connection with the term named in the lease, we are inclined to think that the whole lease is subject to the construction that the term intended by the parties was for five years and as much longer as either gas or oil is produced and sold therefrom in paying quantities. Unless so construed, then the lease by its express terms ended on the 18th of September, 1921, for the reason that both oil and gas were not found thereon. If, however, recourse may be had to these other provisions in construing the provision as to the term as meaning oil or gas, then, of course, all the terms of these other paragraphs must be given full effect.

Under the terms of the lease the lessee was not required to pay $100 a year rental upon each of these two gas wells. These payments were voluntarily made. They were first refused by the lessors, but afterwards accepted. The plaintiffs having accepted these rentals, although voluntarily made, and not in pursuance of the terms of the contract, they cannot now be heard to dispute the right of the defendant to market gas from these wells during the time for which the rentals were paid and accepted. The term of five years named in the lease expired more than eight months prior to the commencement of this action. Unless the term of the lease was extended beyond five years in accordance with the terms therein written, then at the time this action was brought the defendants had no right, title, or interest in plaintiff's land under and by virtue of this lease.

[1] It is the claim of the defendant that this term was extended by reason of the fact that it had drilled thereon two gas wells, both of which produced gas in considerable quantities, but without sufficient pressure to make it possible to market this gas off the premises. This is a condition precedent to the right of the landowner to require the lessee to pay the stipulated rental of $100 per year for each well. While it appears from the record that the time this lease was executed this territory was known by lessors and lessee to be "wildcat" territory, yet the presumption naturally obtains that the term of five years named in the lease was in the opinion of both parties sufficient time in which this "wildcat" territory could be reasonably developed, and oil or gas produced in paying quantities, if at all. Two wells in five years upon 900 acres of land would not seem to be a reasonable development. Hazel Green Oil & Gas Co. v. Collier et al., 130 Ky. 132, 110 S. W. 343. Even this development did not result in producing any revenue whatever to the lessor under the provisions of the lease. What was paid them during the term of the lease was a mere gratuity. What was paid for rentals after the termination of the lease was equally voluntary, and wholly at the option of the lessee. The lessors had no right to demand and no right of action to recover these rentals, and will have no such rights if the drilling of these two wells is held to constitute an extension of the terms of this lease. In such event, the term of the lease would be indefinitely extended, free of any legal obligation upon the lessee to pay. While it is true that the primary object of this lease was the development of the land as oil territory, yet it also included gas. That being true, the lessee must be held to have accepted the same with knowledge that, if the land produced gas only, he would be required to find a market for that gas within the five-year term, so that the lessor would be in position to demand, as a matter of right, the rents and royalties stipulated in the contract. For the reasons stated, the voluntary payment was not equivalent to performance, nor are the lessors estopped by reason of having accepted these rentals. The evidence in this case wholly fails to establish the necessary elements of estoppel.

[2] We are also clearly of the opinion that the trial court was in error in its holding that this lease could not be canceled, or the term declared ended, as to that part of the territory where there had been no development and no effort to develop within the five years. Where the lessee has developed a portion of the leased premises with reasonable diligence, and has failed to develop the whole of the premises in accordance with the terms and conditions of the lease, the lessor may, by strict construction of its provisions, appear to be entitled to a cancellation of the entire

lease. But a court of equity is not required to decree a cancellation of the entire lease, if by doing so the lessee would be deprived of valuable property, and the lessor obtain an unconscionable advantage. In such case it is the duty of the court of equity, and not merely a favor to the lessee, to effectuate justice between the parties. Brewster v. Lanyon Zinc Co., 140 F. 801, 813, 72 C. C. A. 213; Coffinberry v. Sun Oil Co., 68 Ohio St. 488, 67 N. E. 1069; Pelham Petroleum Co. v. North, 78 Okl. 39, 188 P. 1069; Carder v. Blackwell Oil & Gas Co., 83 Okl. 243, 201 P. 252; Jennings v. South Carbon Co., 73 W. Va. 215, 80 S. E. 368. This, of course, does not mean that a lessor could expect a court of equity to cancel the lease as to part of the land, and yet compel an unwilling lessee to perform as to the remainder.

In this case the lessors have not asked that the lessee be deprived of the two wells drilled on this property, or the land immediately surrounding each of these wells, from which gas may be produced through them. Having accepted rentals on these two wells after the expiration of the term named in the lease, it would be inequitable to deny the right of the lessee to market this gas from these wells as long as lessee continues to pay the rentals. On the other hand, if the five-year term of the lease was not extended by the drilling of two gas wells, no part of the product of which was being marketed off the premises at the end of the five-year term, the lessee cannot complain that the decree of the court reserves to him the property rights in these two wells, although upon a strict construction of the provisions in the lease the court is of the opinion that the drilling of these two wells did not extend the five-year term, and that, even if there were a technical compliance with the provisions in reference to the extension of the term, there was no such reasonable development of the entire property within the five years as would avoid the cancellation of the lease on the undeveloped portions thereof.

The decree of the District Court is reversed, but, for the reason that the amount of land that should be reserved to these two wells does not satisfactorily appear from the evidence, the cause is remanded, with directions to the District Court to take further evidence as to the amount of land that should be reserved around each of these wells, unless the parties agree in reference thereto, and to enter a decree declaring that the term of this lease has been fully ended and determined, and that lessees have no further right or interest therein, except as to these two wells, and such acreage as the court may find upon the evidence, or may be agreed upon by the parties, should be reserved to the lessees.