## Conley v. Wheeler-Watkins Oil & Gas Company.

(Decided October 26, 1926.)

## Appeal from Johnson Circuit Court.

1. Mines and Minerals—Requirement in Oil Lease of Due Diligence in Drilling Will be Implied, Unless Express Provision is Made.— Even in absence from oil lease of express requirement of due diligence in drilling operations such requirement will be implied, where lessor's compensation is a share of what is produced, notwithstanding lessee has paid a valuable consideration for his lease, but lease, expressly providing time and manner of development, excludes any implied covenant.

2. Mines and Minerals—Oil Lease Held Not Subject to Forfeiture During Minimum Term After Drilling of Well which, Under Terms of Lease, was Full Consideration for Grant Made.—Oil lease, requiring lessee to commence well within three months, and providing that "the drilling of such well . . . shall be full consideration . . . for the grant hereby made," held, after drilling of first well within time required and 12 others on another part of land, not subject to forfeiture during specified minimum term for refusal of lessee to drill additional wells.

3. Contracts.—An option to do a thing cannot create obligation to do it.

4. Contracts.—Forfeitures are not favored and not adjudged, unless the right is clear.

FRED HOWES for appellant.

WHEELER & WHEELER and S. S. WILLIS for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON— Affirming on original appeal and reversing on cross-appeal.

On January 21, 1921, John F. Conley and wife executed an oil and gas lease to the Wheeler-Watkins Oil & Gas Company. The grantee entered under the lease. On December 13, 1924, Conley brought this suit to obtain a judgment forfeiting the lease. The lease, besides granting the usual easements, contained, among other things, these provisions:

"This indenture made the 21 day of January A. D. 1921, between John F. Conley of Winn, county of Johnson, state of Kentucky, grantor, and Wheeler-Watkins Oil & Gas Company of Catlettsburg, Kentucky, grantee.

"That the grantor in consideration of fifteen hundred dollars, the receipt of same being hereby acknowledged, does grant and convey unto the said grantee, all the oil and gas in and under the following described tract." (Here follows description of land.)

"To have and to hold the interest hereby conveyed unto said grantee, for the term of five years from the date hereof and as much longer as oil or gas is produced in paying quantities, yielding and granting to the grantor the one-eighth part of all the oil produced and saved from the premises, delivered free of expense into tanks or pipe lines to the grantor credit.

"Grantor to commence a well on said premises within three months from date hereof or pay unto the grantor one hundred and fifty dollars each three months thereafter in advance until said well is completed or this grant surrendered, which grantor hereby agrees to accept. The drilling of such well or otherwise, shall be a full consideration to the grantor for grant hereby made to grantee with the exclusive right to drill one or more additional wells on the premises without payment of additional rental."

The cash consideration was paid; the grantee commenced and completed a well on the property within three months from the date of the lease, but this well was a dry hole. After some delay it then went on and put down twelve other wells on the north side of the property. These wells were oil producing. What is called a fault runs through the Conley farm, east and west. The farm consists of 185 acres and about half of it lies on the south side of the fault. The fault consists in a slipping of the rock underneath the surface of the earth. The fault is a few feet wide and runs down about 180 feet at an angle of about fifty-five degrees. Thus the oil bearing sand south of the fault is 180 feet lower than north of it. The first well was put down about 600 feet south of the fault. It proved to be a dry well and the grantee then went north of the fault and there struck oil. The twelve wells were located along the border of the northern part of the farm and Conley insisted that additional wells should be put down between these wells and the fault. He also insisted that other wells should be put down

south of the fault. The company declined to do this, and thereupon, after serving written notice, he brought this action to obtain a forfeiture of the lease. The circuit court adjudged Conley a forfeiture of so much of the land as lay south of the fault, but declined to adjudge a forfeiture of any part of the land north of the fault. From this judgment Conley has appealed and the company prosecutes a cross-appeal.

The proof for Conley is to the effect that an oil well will drain for about 450 feet in each direction and that to properly develop the land oil wells should be put down on each five acres of the land. Under this proof eight or ten more wells would be necessary to develop that part of the land which lies north of the fault. On the other hand the proof for the company is to the effect that it had spent about $55,000.00 in putting down the wells on the property and that it was good business judgment not to put down other wells for the present. The proof for the defendant also shows that three wells have been put down south of the fault, all of which were dry wells and that there is no good reason to believe that oil will be found south of the fault. In 40 C. J., p. 1064, the rule is thus stated:

"Under some leases it is expressly required that the drilling operations must be prosecuted with due diligence. But even in the absence of such expressed requirement, where by the terms of the lease the compensation to the lessor is a share of what is produced, the law implies a covenant on the part of the lessee, that he will use reasonable diligence and good faith in exploring, developing and operating the property for oil and gas; and whatever is necessary to the accomplishment of that which is expressly contracted to be done under an oil lease is part of the contract, although not specified, and when so incorporated by implication is as effectual as if expressed. The fact that the lessee has paid a valuable consideration for his lease does not relieve him of this implied obligation. Where, however, the lease expressly provides the time and manner of the development of the property for oil or gas, it excludes any implied covenant on the subject; and where it is expressly agreed that a specified number of wells shall be drilled in a given period, there is

no implied obligation to drill additional wells, unless it is necessary to do so as a protection from operations on adjacent premises. But the fact that the lease expresses in general terms covenants that are usually implied adds nothing to the lessee's obligations.

"The diligence required of the lessee generally involves such a course of conduct on his part as operators of ordinary prudence would pursue, having in mind the securing of the financial benefits sought by both parties."

This rule is peculiarly applicable after the discovery of oil or gas in paying quantities, 40 C. J., p. 1065. There is some difficulty in reconciling the cases on this subject, but in the main it will be found that the difference in the cases is due to the difference in the provisions of the contracts before the court. In Kies v. Williams, 190 Ky. 596, it was held that a completed oil well is one drilled to the sand in which oil in that district is usually found, although it be a dry hole, unless a different meaning is expressed in the contract, and that no forfeiture of the lease could be had where it provided that it should cease unless a well was completed within a year, the well which proved a dry hole having been completed within a year. This was followed in Sugg v. Williams, 191 Ky. 188. In that case the fact that the development of the property was not the sole consideration for the contract was pointed out as material in these words:

"In this case the development of the property was not the sole consideration. On the contrary, the lessees paid the lessors $1,000.00 in cash. The lessees within one year drilled four wells into the oil bearing sands."

In Bradshaw v. Hurt, 198 Ky. 38, the lease provided that the completion of a well should operate as a full liquidation under its provisions during the remainder of the term of the lease. Holding that there could be no forfeiture for not putting down other wells the court said:

"It is shown in the evidence in this case that the well drilled by appellants on appellee's lands cost a large sum of money. This expenditure in

drilling the well was a detriment to the lessee and this detriment was a sufficient consideration to support an agreement to cancel all rentals for the balance of the term. No one, we think, would insist that a landowner might not for a sufficiently valuable consideration agree to. lease his land for oil and gas to another for a term of ten years without requiring development or the further payment of rentals. If he can do this, as it must be admitted he can, then he may agree with his lessee that if the latter will drill a well on his premises to the oil bearing formation such drilling (which manifestly costs a large sum) shall operate.as a full liquidation of all future rentals under the lease.''

In Stock v. Virginia, &c., Oil Co., 198 Ky. 527, the court had before it a lease which contained these words:

''And it is agreed that the completion of said well shall be and operate as a full liquidation of all rentals under this provision during the remainder of the term of the lease.''

It was held that under this clause in the contract the lessor could not collect rent during the term of the contract. The question came again before the court under a like lease in Unity Oil Co. v. Hill, 200 Ky. 651, where the court, adhering to its former ruling, said this:

''A well was drilled and completed, though it proved to be a dry well. This service was rendered at a very considerable expense to the lessee. It was incurred in exploring the leased property, and, although the exploration was not profitable to the lessor, it involved a large expenditure and was a sufficient consideration for the stipulation that it should be in full liquidation of all rents for the term of the lease. The parties agreed that it should constitute a liquidation of those rents, and this agreement, under the two recent cases just referred to, operates to defeat a cancellation of the lease.''

The court is unable to see any substantial difference between the provisions of the lease sued on and that before the court in Bradshaw v. Hurt or Unity Oil Co. v. Hill. The language here is: ''The drilling of such well or otherwise shall be a full consideration to the grantor

for grant hereby made to grantee." If the drilling of the well is the full consideration of the grant and the consideration has been paid there can be no forfeiture of the lease. In fact this contract is stronger than the one there before the court, for it contains these additional words: "With the exclusive right to drill one or more additional wells on the premises without payment of additional rental." These words do not create an obligation to put down additional wells. They merely confer a privilege or option, and when the parties in their written contract expressly confer a privilege or option the court cannot imply an obligation which would be inconsistent with the plain language of the contract. The minimum term of the lease is five years. We therefore conclude that the consideration for the five year term being the cash payment of $1,500.00 and the obligation to put down one test well in three months, the grantor cannot within the five year term demand the putting down of additional wells, for this would be to add to the terms of the contract. The grantee for the consideration named has a certain term of five years, and the consideration having been paid for this certain term there can be no implied obligation for the grantee to do more during the term. The contract expresses what he must do and he cannot be required to do more. But after the five years a different rule might apply, for Conley's farm will be burdened by the easements granted as long as the oil is obtained, and it is implied by the contract, which gives the grantee the right to continue as long as oil is obtained, that he will use ordinary diligence in getting out the oil, for otherwise he might by his delay burden the farm with his easement more than a reasonable time for this purpose. Such was the case of Brewster v. Lanyon Zinc Co., 140 Fed. 801. The cases, so far as we have seen, which go further and apply the doctrine of an implied covenant to the certain term fixed by the lease, are all cases in which there was no such language as in the lease before us. The grantee paid $1,500.00 for the grant. The only other thing required of him by the contract is to commence a well in three months, and complete it within a reasonable time. This is the full consideration for the grant. The grantee is given an option to put down other wells, but to hold that he must put down other wells within the five years is to deny him the option which the contract plainly gives him. The option as to putting

down other wells was a part of the consideration for which the grantee paid $1,500.00. An option to do a thing cannot create an obligation to do it. Forfeitures are not favored and are not adjudged unless the right is clear. Big Jack Oil Co. v. McGinnis, 203 Ky. 262.

The court, therefore, concludes that no right to forfeit the lessee had accrued when this action was brought, and that the circuit court should have dismissed the plaintiff's petition seeking a forfeiture of the lease.

Complaint is made that the circuit court did not require the grantee to put down an offset well opposite a well on the Henry Cantrill lease; but the proof does not show that oil has been discovered in paying quantities in this well. The production of that well is so small that the circuit court was well warranted in holding under the evidence that an offset well was not necessary.

Judgment affirmed on the original appeal and reversed on the cross-appeal, with directions to dismiss the petition.