## American Wholesale Corporation v. F. & S. Oil & Gas Company et al.

(Decided February 9, 1932.)

RODES & HARLIN for appellant.

THOMAS & BELL for appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON— Affirming

C. G. Davenport and Orie S. Davenport in 1919 owned certain lands suituated in Warren county, Ky. Title to one tract was in C. G. Davenport and the other in Orie S. Davenport. By different written instruments they leased their respective land to W. J. Balmer and Edward M. Shaw for the purpose of operating for oil and gas, with the prvilege to lay pipe lines and install such equipments as would be required for the pumping, caring for and marketing the oil and gas produced.

This provision is in both leases:

"It is agreed that this lease shall remain in force for a term of four years from this date, or so long thereafter as oil or gas or either of them is produced therefrom by the parties of the second part, their successors or assigns. . . . Cessation of operation shall not be continued for more than ninety days after the first well is completed." ·

The royalty reserved to the lessor was one-eighth of the oil produced and marketed.

The F. & S. Oil Company by mesne assignments thereafter became the owner of an undivided interest in the lease on 25½ acres of the Orie S. Davenport tract. Shaw and Balmer retained a certain interest in the lease thereon. Three oil wells were drilled on the 25½ acres which were pumped from the time of their completion in 1920 until on or about April 21, 1926, and the one-eighth royalty was paid to her. The situation of the 25½ acres, its proximity to a pipe line and accessibility to market, are both alleged and proven. It lies within developed oil territory, and there are producing wells within 200 to 400 feet of the wells on it. On or about February 1, 1926, the F. & S. Oil & Gas Company and Balmer and Shaw left the leased premises and ceased to pump the wells, or market the oil. About June 1, 1927, Orie S. Davenport took actual possession of the 25½ acres, the wells and equipments used in connection therewith. She assumed complete control of the operations of the 25½ acres, expended approximately $200 to repair the equipments theretofore used, with which she pumped and marketed the oil.

The land of C. G. Davenport comprised 331 acres. The lessees subdivided it into 50-acre tracts, and sold the entire lease, except an interest in the lease on 50 acres in controversy, on which two wells were drilled, with a production of one barrel each per day. The equipment thereon used in pumping the wells was approximately of the value of $900. The lessees left this 50 acres, stopped development, ceased to pump the wells and to pay royalty. From February 1, 1926, to June 1, 1927, no one was in possession of, or exercising control over, this portion of the 331 acres, or looking after, or caring for, or giving any attention to the wells and equipment thereon.

C. G. Davenport sold his land to Orie S. Davenport. About June 1, 1927, he took charge of the 50 acres and the 25½ acres, and the wells and equipments thereon, as agent of Orie S. Davenport, began to pump the oil, conveyed it to market and accounted to her for the proceeds.

Some time in March, 1924, the F. & S. Oil Company executed its forty-five notes to M. Leader, and to secure their payment executed and delivered to him a mortgage on certain property situated in Warren county, Ky., including the leases as to the 50 and 25½-acre tracts, and

the wells and equipments. M. Leader assigned the notes to the American Wholesale Corporation. The appellant, American Wholesale Corporation, after it became the owner of the notes and mortgage, and after the lessees and their assigns ceased to pump the wells and market the oil from the 50 and 25½ acres, did not, nor any one for it, resume the operation of the wells. It instituted this action in 1928, in the Warren circuit court, to enforce its mortgage, making the F. & S. Oil & Gas Company, Orie S. Davenport, C. G. Davenport, Edward M. Shaw, and W. G. Balmer, defendants. Appropriate pleadings were filed by Orie S. Davenport and C. G. Davenport, presenting the issue of abandonment of the leases, wells, and equipments used in the operation of the wells on the 50 and 25½ acres. Issues were made, the evidence was taken, and, on the trial, the chancellor canceled the lease as to the 50 acres and also the 25½ acres; adjudged that the equipments used in connection with the wells on June 1, 1927, had been abandoned by the lessees and their assigns; that C. G. Davenport and Orie S. Davenport were the owners thereof, and refused to enforce appellant's mortgage. From this judgment this appeal is prosecuted.

It is conceded that the only question presented for consideration and determination is, Did the court err in canceling the lease on the 50 of the 331 acres and on the 25½ acres, and in holding the equipments had been abandoned, and in refusing to enforce appellant's mortgage?

The appellant argues that the right of the lessors to cancel the leases as to the 50 and 25½ acres is the same as if this were an action to cancel the leases on the entire tracts; that the wells on the remainder of the original tracts are producing, and the oil marketed therefrom by the owners of the leases thereon, and that this precludes the right of the lessors to cancel the leases as to the 50 and 25½ acres; that there is no privity of contract between the Davenports and the holders of the leases, in so far as the 50 and 25½ acres are concerned. It is further contended that the lessors gave no notice and made no demand of the lessees or their assignees to surrender the leases, before their re-entry on the 50 or the 25½ acres. The appellant urges that the lessees were the sole judges and have the exclusive right to determine the continuance or the cessation of the pump-

ing and selling the oil. To sustain this contention they cite and rely upon Johnson v. Dodson, 227 Ky. 132, 12 S. W. (2d) 310, and Gypsy Oil Co. v. Cover, 78 Okl. 158, 189 P. 540, 11 A. L. R. 129. To these may be added Leeper Oil Co. v. Rowland, 239 Ky. 295, 39 S. W. (2d) 486.

The principles urged by appellant which were applied in the cases, supra, and others that might be cited, have no application to the facts in the present one. In the cases cited and relied upon by appellant, partial development by the lessees, or their assignees, had been made, and they were at the time in the actual possession of the leased premises and actively engaged in operations, but the lessors desired either more rapid or extended development. In such cases, we have often held that notice and demand of further development were necessary and required, before equity will permit the lessor to cancel or forfeit the lease, whether authorized by the express provisions therein or the implied covenants, and, if the lessor was receiving royalty rental, he must also decline to accept it and demand of the lessee further development before he is entitled to cancel or forfeit the lease, Monarch Oil & Gas Co. v. Richardson, 124 Ky. 602, 99 S. W. 668, 30 Ky. Law Rep. 824.

The rule requiring notice and the demand for further development before such right exists does not apply in every case. There are some cases in which the giving of notice may be unnecessary; for instance, where the abandonment of the contract may be inferred from the fact the lessee has been in default for an unreasonable time or has intentionally breached the obligations of the expressed or implied covenants. Black on Rescission and Cancellation, vol 12, sec. 571; Hitt v. Henderson, 112 Okl. 194, 240 P. 745; Fox Petroleum Co. v. Booker, 123 Okl. 276, 253 P. 33.

The leases in the present case contain no forfeiture clause. The cessation of the pumping and marketing of the oil occurred after the four-years term stipulated in the leases had expired, and the wells were not producing in paying quantities by virtue of the default of the owners of the leases on the 50 and the 25½ acres.

The owners thereof, or those interested therein, appear to be Edward M. Shaw, W. J. Balmer, John L. Carmody, and G. I. Soli, trustees of the Shaw and Balmer Syndicate, M. A. Rosanski, I. Frank, Chas.

Seeman, Lean Frank, and Hazel Seemen, and they are nonresidents of the state of Kentucky and absent therefrom. Whether they were nonresidents during the operation of the leases on the 50 and on 25½ acres does not appear.

Long prior to the time of the cessation of the pumping of the wells and the marketing of the oil, the owners had mortgaged the leases, the wells and equipments; the production was small, and, when compared with the mortgage debt, was insignificant. They only owned an equity therein. Under these circumstances, it is not unfair to say that their default shows notice and demand should not be required of the lessors, before they are entitled to relief.

The owners of the leases as to the 50 and the 25½ acres were under the implied obligation to take and market the oil from the wells thereon, respectively owned by them, with reasonable diligence, and to pay the lessors the equal of one-eighth part as the royalty. Thornton's Law of Oil & Gas (14th Ed.) sec. 104; Lamb et al. v. Vansyles, 205 Ky. 597, 266 S. W. 253; Hails, Trustee, v. Johnson & Stein, 204 Ky. 94, 263 S. W. 679; Bay State Petroleum Co. v. Lubricating Co., 121 Ky. 641, 87 S. W. 1102, 27 Ky. Law Rep. 1133; Berry v. Frisbie, 120 Ky. 337, 86 S. W. 558, 27 Ky. Law Rep. 724; Soaper v. King, 167 Ky. 121, 180 S. W. 46; Rose v. Union Gas & Oil Co. (C. C. A.), 297 F. 16; Beatty-Nickell Oil Co. v. Smithers, 49 Ind. App. 602, 96 N. E. 19; Gadbury v. Ohio & Ind. Consol. Nat. & Illuminating Gas Co., 162 Ind. 9, 67 N. E. 259, 62 L. R. A. 895; Coffinberry v. Sun Oil Co., 68 Ohio St. 488, 67 N. E. 1069; Collins v. Mount Pleasant Oil & Gas Co., 85 Kan. 483, 118 P. 54, 38 L. R. A. (N. S.) 134; Covenants Implied in Oil & Gas Leases, Merrill, sec. 42, page 122; White v. Green River Gas Co. (C. C. A., Ky.), 276, 8 F. (2d) 261; Fox Petroleum Co. v. Booker, 123 Okl. 253 P. 33; Hitt v. Henderson, 112 Okl. 194, 240 P. 745; Conley v. Wheeler-Watkins Oil & Gas Co., 216 Ky. 494, 288 S. W. 350.

In the absence of a provision in the leases authorizing the owners thereof to shut down pumping and to cease marketing the products therefrom for an unreasonable period of time, without the consent of the lessors, such action constitutes, not only a clear breach of the implied covenants, which the courts, in the absence of an expressed provision, regard as a part of every oil and

gas lease, but also an unreasonable deprivation of the lessors of the consideration of the leases as well as the infliction of a loss which they were without right to impose in that manner upon the lessors. Conley v. Wheeler-Watkins Oil & Gas Co., 216 Ky. 494, 288 S. W. 850.

The lessees were not the arbiters of the extent to which, or the diligence with which, the operations thereunder shall proceed; but both the lessors and the lessees were bound by the standard of what, in the circumstances, would be reasonably expected of an operator of ordinary prudence, having due regard to the interest of both. Fox Petroleum Co. v. Booker, supra; Ross v. Sheldon (Ky.) 119 S. W. 225.

Text-writers and the courts generally consider three distinct situations when discussing "abandonment." First, where the lease is wholly unexecuted and has expired by its own terms; second, where the lessee commits some positive act showing his intention to abandon the lease; and, third, where the element of intention to give up the leased property is lacking, but the lessee for a longer or shorter period of time fails to carry on the work imposed upon him by the expressed or implied covenants of the lease.

Mr. Merrill in his most excellent work on Covenants Implied in Oil & Gas Leases, at page 20, says the term "abandonment" is often erroneously applied. He further states that:

> "In the case of a true abandonment, the lessee's title is gone the minute he determines to give up the property and does some act in pursuance of that intention. In cases of the class under consideration, however, the intention to give up the property is absent. There is, of course, no act done in pursuance of such an intention. The lessee's intention is to keep the lease, but to postpone the work of exploration, development or operation to a time which suits his convenience. To declare the lease at an end, against the lessee's express intention, because of such postponement, is to put upon him an obligation to explore, to develop or to operate, as the case may be. His title is terminated, not by his intention, but because of his failure to comply with the obligation imposed by the law. It is, therefore, lost by failure to comply with the implied covenants of the lease,

and not by abandonment. Abandonment is an intentional and voluntary relinquishment; an enforced and involuntary giving up of rights under the lease must be a forfeiture for breach of the obligations imposed by the implied covenants. The weight of authority recognizes this important and fundamental distinction.''

Where the lease is abandoned or lost by failure to comply with its implied covenants, in either case, the lessor may enter and take possession of the leased premises and assume control, his action, however, is subject to a review by the courts at the instance of the lessee; or he may institute an action in equity for a cancellation of the lease; or an action at law for damages for breach of the expressed or implied covenants. Carroll, Gas & Oil Co. v. Skaggs, 231 Ky. 284, 21 S. W. (2d) 445; Hails, Trustee, v. Johnson & Stein, 204 Ky. 94, 263 S. W. 679; Cole v. Taylor, 8 Pa. Super. Ct. 19; Fox Petroleum Co. v. Booker, supra.

The fact that the owners of the leases covering the remainder of the 331 acres and the original tract, of which the 25½ was a part, were discharging the implied obligation which required them diligently to take and market the oil from their respective portions of the original acreage, did not relieve the owners of the leases as to the 50 and 25½ acres of their obligations to take the oil from their wells and to market it and to account to the appellees for their royalty therefrom, nor deprive the lessors of the right to regard and treat the leases as abandoned, or lost to the owners by their failure to comply with the implied covenants of the leases.

It needs no authority to sustain the statement that the performance by one obligor of his obligation to an obligee does not excuse or release another independent obligor of his obligation to the same obligee. There was no privity of contract between the owners of the leases in so far as they covered the 50 and 25½ acres and the owners of the leases on the remainder of the original tracts, out of which the 50 and 25½ acres were carved and assigned to them by the original lessees.

The appellees were entitled to be paid their royalty for the acreage by the owners of each subdivision of the original acreage from the producing wells respectively owned by them under the assignment thereof by the

original lessees; and the payment by the one did not relieve any one, or more of the others, of the payment of the royalty rental from the wells respectively owned by him or them. It is plain that the one might abandon his acreage or violate the covenants of the lease as to his acreage without affecting the right of the other.

The court may, even as between the original lessee and lessor, cancel a lease as to a part of the leased premises, or it may cancel it as to only a portion thereof. The court is not required to decree in any case the cancellation of the entire lease, if by so doing the lessee would be deprived of valuable property and the lessor obtain an unconscionable advantage. This rule effectuates justice according to the established principles of equity. A fortiori, when the original acreage has been subdivided and certain portions thereof assigned to different assignees, the court may cancel the lease as to the one and not as to the other. Brewster v. Lanyon Zinc Co. (C. C. A.), 140 F. 801; Coffinberry v. Sun Oil Co., 68 Ohio St. 488, 67 N. E. 1069; Jennings v. South Carbon Co., 73 W. Va. 215, 80 S. E. 368; White v. Green River Gas Co., supra; Fox Petroleum Co. v. Booker, supra.

In Roesener v. Burdette, 208 Ky. 137, 270 S. W. 731, the lessee for a period of two years took no steps to assert his rights nor to indicate his purpose to develop the property.

In Warren Oil & Gas Co. v. Gilliam, 182 Ky. 807, 207 S. W. 698, and Dix River Barytes Co. v. Pence (Ky.) 123 S. W. 263, no operations were had and no rentals were paid for a period of one year.

In Monarch Oil & Gas Co. v. Hunt, 193 Ky. 315, 235 S. W. 772, the lessee drilled one well and made no further effort to drill or develop the lease for more than one year. These facts authorized the lessors to assert the right to terminate the leases.

The lessors were clearly within their rights when they entered upon and assumed control of the wells and equipment on the 50 and 25½ acres.

The rights herein of the appellant as a mortgagee must be measured and determined by those of the mortgagor. Cassidy v. E. M. T. Coal Co., 204 Ky. 278, 264 S. W. 744.

Wherefore the judgment is affirmed.